Richard C. Weston (State Bar No. 126491)
Wynn C. Kaneshiro (State Bar No. 166683)
**WESTON & McELVAIN LLP**
1960 East Grand Avenue, Suite 400
El Segundo, California 90245
Telephone:    (213) 596-8000
Facsimile:    (213) 596-8039
E-mail:    rweston@wmattorneys.com
            wkaneshiro@wmattorneys.com

Attorneys for Defendant, Third Party Plaintiff
And Counterclaimant **AmGUARD INSURANCE
COMPANY**

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| STARR INDEMNITY & LIABILITY COMPANY, a Texas Corporation, | Case No.: 4:20-cv-959-SI |
| | Assigned to: Hon. Susan Illston |
| Plaintiff, | |
| | **THIRD PARTY PLAINTIFF AND** |
| vs. | **COUNTERCLAIMANT AMGUARD** |
| | **INSURANCE COMPANY'S THIRD** |
| | **PARTY COMPLAINT AND** |
| AMGUARD INSURANCE COMPANY, a Pennsylvania Corporation, | **COUNTERCLAIM FOR RESCISSION** |
| | **AND DECLARATORY RELIEF** |
| Defendant. | |
| _____ | |
| AMGUARD INSURANCE COMPANY, a Pennsylvania corporation, | |
| Third Party Plaintiff and Counterclaimant, | |
| vs. | |
| ZORIALL LLC, a California limited liability company; ANNE KIHAGI, a California citizen; CHRISTINA MWANGI, a California citizen; DALE DUNCAN, a California citizen; MARTA MUNOZ MENDOZA, a California citizen; and STARR INDEMNITY & LIABILITY COMPANY, a Texas corporation, | |
| Third Party Defendants and Counter-Defendant. | |

Defendant AmGUARD Insurance Company, for its Counterclaim against Starr Indemnity & Liability Company and for its Third Party Complaint against the Third Party Defendants, alleges and avers as follows:

## JURISDICTION

1.      This Court has original jurisdiction under 28 U.S.C. §1332 in that the above-captioned matter is a civil action between citizens of different states in which the matter in controversy exceeds $75,000, exclusive of costs and interests, in that, among other things, plaintiff Starr Indemnity & Liability Company seeks damages in excess of $300,000 with respect to the defense fees and costs it incurred with respect to the underlying *Smyth* Lawsuits and the plaintiffs in the underlying *Duncan* Lawsuits seek damages in excess of $2,700,000 based on the judgment awarded in the *Duncan* Lawsuits.

## INTRODUCTION

2.      Pursuant to 28 U.S.C. §2201, AmGUARD Insurance Company (hereinafter "AmGUARD") seeks to rescind the Businessowner's Policy issued by AmGUARD to the named insured Zoriall LLC, policy number Z0BP601626 with effective dates of July 20, 2015 to July 20, 2016 ("Policy").  AmGUARD also seeks a judicial determination that no potential for coverage and no coverage exists for various underlying actions brought against Zoriall LLC, Anne Kihagi and Christina Mwangi including the judgment awarded against them in the *Duncan* Lawsuits.

3.      AmGUARD is entitled to rescission based on the material misrepresentations, fraudulent representations and/or concealment of material facts in the insurance application submitted by Zoriall LLC to AmGUARD.  For the same reasons, AmGUARD is entitled to a declaration that no coverage exists for the underlying actions.  In addition, various policy provisions, endorsements and exclusions bar coverage for the underlying actions.

## THE PARTIES

4.      Plaintiff AmGUARD Insurance Company is, and at all relevant times was, an insurance company organized under the laws of the State of Pennsylvania having its principal place of business in Wilkes-Barre, Pennsylvania.

/ / /

AMGUARD'S THIRD PARTY COMPLAINT AND COUNTERCLAIM

5.    AmGUARD is informed and believes, and on that basis alleges, that Starr Indemnity & Liability Company ("Starr") is, and at all relevant times was, a corporation organized under the laws of the State of Texas having its principal place of business in New York, New York.

6.    AmGUARD is informed and believes, and on that basis alleges, that defendant Anne Kihagi ("Kihagi") is and at all relevant times was, a citizen of California, residing in Los Angeles County, California.

7.    AmGUARD is informed and believes, and on that basis alleges, that defendant Christina Mwangi ("Mwangi") is and at all relevant times was, a citizen of California residing in Alameda County, California.

8.    AmGUARD is informed and believes, and on that basis alleges, that defendant Zoriall LLC ("Zoriall") is, and at all relevant times was, a limited liability company organized under the laws of the State of California having its principal place of business in West Hollywood, California.  AmGUARD is informed and believes, and on that basis alleges, that Zoriall's sole member is Anne Kihagi.

9.    AmGUARD is informed and believes, and on that basis alleges, that defendant Dale Duncan ("Duncan") is, and at all relevant times was, a citizen of California, residing in San Francisco County, California.

10.    AmGUARD is informed and believes, and on that basis alleges, that defendants Marta Munoz Mendoza ("Mendoza") is, and at all relevant times was, a citizen of California, residing in San Francisco County, California.

11.    Venue is proper in this district pursuant to 28 U.S.C. §1391 in that the defendants are subject to personal jurisdiction in this district at the time that the action commenced, the property insured under the Policy and owned by Zoriall LLC is located in San Francisco, the underlying actions giving rise to this action are and/or were pending in San Francisco Superior Court, and there is no district in which this action may otherwise be brought.

/ / /

/ / /

AMGUARD'S THIRD PARTY COMPLAINT AND COUNTERCLAIM

## **BACKGROUND FACTS**

## **THE AMGUARD POLICY**

12.     On or about July 8, 2015, Zoriall submitted an application to AmGUARD for a Businessowners Policy for its property located at 69 Hill Street, San Francisco, California (hereinafter "Hill Street Property").  In that application, Zoriall represented to AmGUARD that: a) it had no litigation during the prior five years; b) it had a property maintenance agreement in place for the property; and c) the Hill Street Property was in full compliance with all life safety requirements and all applicable building ordinances and laws.  A true and correct copy of the pertinent portions of the Application is attached as **Exhibit A** to this Counterclaim and Third Party Complaint.

13.     These representations were material to AmGUARD's underwriting process and AmGUARD relied on the accuracy of these representations in issuing a policy.

14.     Based on Zoriall's representations, AmGUARD issued a Businessowner's Policy, policy number Z0BP601626 to Zoriall LLC for the policy period July 20, 2015 to July 20, 2016 (the Policy).  A true and correct copy of the Declarations pages of the Policy is attached as **Exhibit B** to this Counterclaim and Third Party Complaint.

15.     The Policy provides in Businessowner's Coverage Form (Form BP 00 03 01 10) as follows:

. . .

**SECTION II – LIABILITY**

**A.  Coverages**

    **1.  Business Liability**

        **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result.  But:

           (1) The amount we will pay for damages is limited as described in Paragraph **D.** -- Liability and Medical Expenses Limits Of Insurance in Section II - Liability; and

AMGUARD'S THIRD PARTY COMPLAINT AND COUNTERCLAIM

    (2) Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph f. Coverage Extension - Supplementary Payments.

 **b.** This insurance applies:

  **(1)** To "bodily injury" and "property damage" only if:

   **(a)** The "bodily injury" and "property damage" is caused by an "occurrence" that takes place in the coverage territory;

   **(b)** The "bodily injury" or "property damage" occurs during the Policy period;

  . . .

  **(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the Policy period.

. . .

### F. Liability and Medical Expenses Definitions

. . .

 **3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

 . . .

 **13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

 **14.** "Personal and advertising injury" means injury, including consequential "bodily injury" arising out of one or more of the following offenses:
  **a.** False arrest, detention or imprisonment;
  **b.** Malicious prosecution;
  **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

 . . .

 **17.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.** Loss of use of tangible property that is not physically injured. All such loss of uses shall be deemed to occur at the time of the occurrence that caused it.

  . . . .

16.  In addition, the Policy provides:

### B. Exclusions

**1. Applicable to Business Liability Coverage**

This insurance does not apply to:

**a. Expected or Intended Injury**

"Bodily injury" or "property damage" (including any unexpected or unintended portion thereof) if any "bodily injury" or "property damage" was expected or intended from the standpoint of any insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property."

. . .

**p. Personal and Advertising Injury**

**(1)** Caused by or at the direction of or with the consent or acquiescence of any insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury;"

. . . .

17.    In addition, the Policy provides:

**E. Liability and Medical Expenses General Conditions**

. . .

**2. Duties in the Event of Occurrence, Offense, Claim Or Suit**

**a.**  You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in claim.  To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.**  If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.**  You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

AMGUARD'S THIRD PARTY COMPLAINT AND COUNTERCLAIM

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit" and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

. . .

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

. . .

**5. Representations**

When You Accept This Policy

By Accepting this policy, you agree:

**a.** The statements in the Declaration are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

\* \* \*

18.    In addition, the Policy provides:

**SECTION III – COMMON POLICY CONDITIONS
(APPLICABLE TO SECTION I - PROPERTY AND SECTION II - LIABILITY)**

. . .

**C. Concealment, Misrepresentation Or Fraud**

This policy is void if any insured, whether before or after a loss, has committed fraud or intentionally concealed or misrepresented any material fact or circumstance concerning:

1.  This policy;

2.  The Covered Property;

3.  An insured's interest in Covered Property; or

4.  A claim under this policy.

\* \* \*

/ / /

/ / /

/ / /

AMGUARD'S THIRD PARTY COMPLAINT AND COUNTERCLAIM

## PRIOR LITIGATION INVOLVING ZORIALL, KIHAGI AND MWANGI

19.     Although Zoriall represented to AmGUARD that it was not involved in any litigation in the past five years, AmGUARD has discovered that the representation was false. Among other things, Zoriall was involved in the following litigation when it submitted the insurance application to AmGUARD: a) *Duncan v. Zoriall LLC*, San Francisco Superior Court, Case No. CGC15-545655 filed on May 4, 2015 ("*Duncan I*"); b) *Zoriall LLC v. Duncan*, San Francisco County Superior Court, Case No. CUD-15-652719 filed on June 25, 2015; c) *City and County of San Francisco* v. *Kihagi,* San Francisco County Superior Court, Case No. CGC-15-546152 filed on June 4, 2015; and d) *Reggars v. Kihagi*, San Francisco County Superior Court, Case No. CGC-15-546342 filed on June 12, 2015.

20.     In the *Duncan I* Action, Dale Duncan and Marta Munoz Mendoza alleged causes of action for nuisance, breach of contract, negligence and violation of San Francisco Administrative Code Chapter 37.10B against Zoriall LLC, Anne Kihagi, and Christina Mwangi (collectively "Kihagi Defendants").  They also alleged various defective conditions at the Hill Street Property and further alleged that the Kihagi Defendants violated the City of San Francisco Rent Ordinance by failing to provide established contractual housing services including an on-site coin laundry, secure accessible mail, and garage bicycle storage, and by interrupting required housing services including common area electrical service and lights, and failing to perform necessary repairs and maintenance.

21.     AmGUARD is informed and believes that Zoriall was served with the Complaint in the *Duncan I* Action prior to June 11, 2015.

22.     AmGUARD is informed and believes that on June 25, 2015, Zoriall filed an unlawful detainer action in San Francisco County Superior Court, Case No. CUD-15-652719, against Dale Duncan and Marta Mendoza, regarding eviction from the Hill Street Property (the "*Duncan UD* Action").

23.     AmGUARD is informed and believes that on or about June 4, 2015, the City and County of San Francisco filed an action in the San Francisco County Superior Court, Case No. CGC-15-546152, against the Kihagi Defendants alleging multiple violations of the San Francisco

AMGUARD'S THIRD PARTY COMPLAINT AND COUNTERCLAIM

Administrative Code, violations of the state housing law, public nuisance, and unfair business practices, with regarding to multiple properties including the Hill Street Property ("the *City* Action").

24.     AmGUARD is informed and believes that  Zoriall was served with the *City* Action on or about June 15, 2015 while Kihagi and Mwangi were each served with the *City* Action on June 22, 2015.

25.     AmGUARD is informed and believes that on June 12, 2015, Nicholas Reggars and Erin Fromherz filed an action in the San Francisco County Superior Court, Case No. CGC-15-546342, against Zoriall, Kihagi and Mwangi claiming, among other things, breach of implied covenant of quiet enjoyment contract, negligence, violation of statutory obligations, statutory lock out, unfair business practices, and nuisance arising out of their tenancy at the Hill Street Property (the "*Reggars* Action").

26.     At no time during the process of applying for the Policy did the Kihagi Defendants disclose to AmGUARD the existence of the *Duncan I* Action, the *Duncan UD* Action, the *City* Action or the *Reggars* Action.

27.     Had AmGUARD known during the application process of the existence and nature of these lawsuits against Zoriall with respect to the Hill Street Property, AmGUARD would not have issued the Policy.

28.     Notably, the Kihagi Defendants have never tendered the *Duncan* Action, the *City* Action or the *Reggars* Action to AmGUARD.

## REPRESENTATION REGARDING COMPLIANCE WITH
## APPLICABLE ORDINANCES AND LAWS

29.     In the Application to AmGUARD, Zoriall represented that the Hill Street Property was in full compliance with all life safety requirements and all applicable building ordinances and laws.  AmGUARD is informed and believes that at the time of the application, the Hill Street Property  was not in full compliance with all requirements and ordinances and laws.

/ / /

/ / /

AMGUARD'S THIRD PARTY COMPLAINT AND COUNTERCLAIM

30.     Had AmGUARD known during the application process that the Hill Street Property failed to comply with all life safety requirements and applicable building ordinances and laws, AmGUARD would not have issued the Policy.

**REPRESENTATION REGARDING PROPERTY**

**MAINTENANCE AGREEMENT**

31.     In the Application to AmGUARD, Zoriall represented that it had a property maintenance agreement in place for the Hill Street Property.  AmGUARD is informed and believes there was no such property maintenance agreement in place for the Hill Street Property.

32.     Had AmGUARD known during the application process that there was no property maintenance agreement in place for the Hill Street Property, AmGUARD would not have issued the Policy.

**THE UNDERLYING *SMYTH* LAWSUITS**

33.     On July 21, 2015, Brian Smyth and Ben Hutchinson filed a complaint in the San Francisco County Superior Court, Case No. CGC-15-546973 against Anne Kihagi, Zoriall LLC, and Christina Mwangi (the *Smyth I* Action).  The *Smyth I* Action alleged defective conditions in the Hill Street Property and alleged causes of action for nuisance, breach of the implied covenant of residential rental agreement, negligent violation of the rental ordinance and unfair business practices.

34.     The *Smyth I* Complaint alleged that the Kihagi Defendants interfered with Smyth's and Hutchinson's right to quiet use and enjoyment of their housing units, failed to provide housing services required by contract or by state or county laws, abused the landlord's right of access into the rental units, failed to properly complete repairs and/or maintenance, and attempted to influence Smyth and Hutchinson to vacate through intimidation and coercion.

35.     On July 26, 2016, Brian Smyth and Ben Hutchinson filed a complaint against Kihagi and Zoriall titled *Smyth v. Kihagi et al.*, San Francisco Superior Court, Case No. CGC 16-553236 (the "*Smyth II* Action") alleging causes of action for violation of the San Francisco Administrative Code and negligence.  Smyth and Hutchinson allege that Kihagi and Zoriall engaged in conduct to improperly and illegally recover permanent possession of the rental units,

AMGUARD'S THIRD PARTY COMPLAINT AND COUNTERCLAIM

failed to perform work at the units after temporarily evicting them to perform said work, failed to pay required relocation payment and failed to allow them to move back into the units.

36.     On December 4, 2017, Kihagi sent a copy of the complaints in the *Smyth I* and *Smyth II* Actions (collectively "*Smyth* Lawsuits") to AmGUARD.

37.     According to Starr, it paid for the attorneys' fees and defense costs incurred by the Kihagi Defendants in connection with the *Smyth* Lawsuits under a policy it issued to Zoriall.  In addition, Starr contends that it fully funded the settlement of the *Smyth* Lawsuits on behalf of the Kihagi Defendants in exchange for a dismissal with prejudice.

## THE UNDERLYING *DUNCAN* LAWSUITS

38.     As discussed above, AmGUARD is informed and believes that on May 4, 2015, Duncan and Mendoza filed the *Duncan I* Action against the Kihagi Defendants.

39.     AmGUARD is informed and believes that on April 15, 2016, Duncan and Mendoza filed a complaint in an action titled *Duncan v. Kihagi*, San Francisco County Superior Court, Case No. CGC 16-551512 (the *Duncan II* Action).  Duncan and Mendoza alleged causes of action for violation of the San Francisco Administrative Code and negligence against Zoriall, Kihagi and Mwangi.  Duncan and Mendoza alleged that the Kihagi Defendants engaged in conduct to improperly and illegally recover permanent possession of the rental unit, failed to move into the unit after evicting them and failed to offer the unit for rent back to them.

40.     AmGUARD is informed and believes that the *Duncan I* Action and the *Duncan II* Action were consolidated by the court for trial (the "*Duncan* Lawsuits").

41.     AmGUARD is informed and believes the *Duncan* Lawsuits were tried to a jury beginning August 29, 2017.  On October 17, 2017, Judge Andrew Y.S. Cheng entered judgment on a jury verdict against the Kihagi Defendants.  The judgment noted that the provisions of the San Francisco Rent Ordinance, San Francisco Administrative Code sections 37.9(f) and 37.10B(c)(5) provides for money damages of not less than three times actual damages to prevailing parties suing in civil courts for harms caused by violations of the San Francisco Rent Ordinance and that San Francisco Rent Ordinance also provides that an award of damages for mental or emotional distress shall likewise be trebled on a factual finding that the landlord acted

1 in knowing violation of or in reckless disregard.  The judgment stated that Duncan and Mendoza

2 are each entitled to judgment against each of the Kihagi Defendants in the amount of three times

3 $196,000 for a total of $588,000 against each defendant for a total sum of $3,528,000 against all

4 the Kihagi Defendants.   A true and correct copy of the Judgment on Jury Verdict is attached as

5 **Exhibit C** to this Counterclaim and Third Party Complaint.

6       42.     AmGUARD is informed and believes that Judge Cheng issued an Amended

7 Judgment on December 7, 2017 in the *Duncan* Lawsuits reducing the total recovery in favor of

8 Duncan and Mendoza and against the Kihagi Defendants to $2,700,000.

9       43.     The Kihagi Defendants have never tendered the *Duncan Lawsuits* to AmGUARD

10 for defense or indemnity.  In fact, AmGUARD was unaware of the *Duncan* Lawsuits until after

11 the court entered judgment against the Kihagi Defendants. As a result of the lack of notice,

12 AmGUARD was prejudiced as it was prevented from participating in litigation strategy,

13 discovery strategy, and settlement discussions.

14       44.     On or about July 10, 2018, Starr tendered the *Duncan* Lawsuits to AmGUARD,

15 over eight months after the judgment was entered.

16              **FIRST CAUSE OF ACTION FOR RESCISSION**

17                (Against All Third Party Defendants and Starr)

18       45.     AmGUARD realleges and incorporates herein by reference each and every

19 allegation contained in paragraphs 1 through 44, inclusive as though fully set forth herein.

20       46.     Zoriall made specific representations to AmGUARD in procuring the Policy.

21 AmGUARD relied on the accuracy of those representations in the Application in issuing the

22 Policy.  Based on information later revealed to AmGUARD, Zoriall made material

23 misrepresentations and/or concealed material facts in the course of procuring the Policy.

24       47.     Had AmGUARD known the true facts, namely that Zoriall, Kihagi and Mwangi

25 were engaged in several lawsuits concerning the Hill Street Property at the time Zoriall submitted

26 the application to AmGUARD, AmGUARD would not have issued the Policy.  Further, had

27 AmGUARD known of the alleged life safety, building ordinance, and/or statutory violations,

28 AmGUARD would not have issued the Policy.

48.     Pursuant to California Insurance Code § 331, AmGUARD is entitled to rescind the Policy based on Zoriall's misrepresentations and/or concealment of material facts.  AmGUARD requests that this Court rescind the Policy and deem it void *ab initio*.

**SECOND CAUSE OF ACTION FOR DECLARATORY RELIEF**

**RE NO COVERAGE UNDER THE POLICY**

(Against All Third Party Defendants and Starr)

49.     AmGUARD realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 48, inclusive as though fully set forth herein.

50.     AmGUARD contends that it has no duty to defend or to indemnify the Kihagi Defendants with respect to the *Smyth* and the *Duncan* Lawsuits under the Policy due to the material misrepresentations and/or concealment of materials facts in the insurance application submitted to AmGUARD.

51.     An actual controversy exists between AmGUARD, on the one hand, and defendants on the other, as AmGUARD contends that it is not obligated to contribute toward the defense and indemnity of the *Smyth* and *Duncan* Lawsuits, whereas defendants contend to the contrary.  AmGUARD seeks a judicial determination that there is no coverage available under the Policy for the *Smyth* and *Duncan* Lawsuits due to Zoriall's material misrepresentations and/or concealment of material facts in its insurance application.

52.     A judicial declaration is necessary and appropriate at this time, under the circumstances, in order that the parties may ascertain their rights and duties under the Policy.

**THIRD CAUSE OF ACTION FOR DECLARATORY RELIEF**

**RE DUTY TO DEFEND  AND INDEMNIFY *DUNCAN* LAWSUITS**

(Against All Third Party Defendants and Starr)

53.     AmGUARD realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 52, inclusive as though fully set forth herein.

54.     AmGUARD contends that it has no duty to defend the Kihagi Defendants with respect to the *Duncan* Lawsuits and that it has no duty to pay for the judgment awarded against the Kihagi Defendants in the *Duncan* Lawsuits.  Among other things, there is no coverage under

the Policy for personal and advertising injury that occurs prior to the inception of the Policy. Second, there is no coverage under the Policy for civil fines, penalties and treble damages and Insurance Code section 533 bars coverage for loss resulting from the wilful act of the insured. Third, the Policy excludes coverage for personal and advertising injury caused by or at the direction of or with the consent or acquiescence of any insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury." Fourth, the voluntary payment provision applies to bar coverage and AmGUARD has no duty to reimburse for defense fees and costs that were incurred prior to tender to AmGUARD. Fifth, there is no coverage because the Kihagi Defendants failed to provide timely notice of the *Duncan* Lawsuits and failed to comply with the terms and conditions in the Policy. In addition, under the terms of the Policy, the Policy is "void if any insured, whether before or after a loss, has committed fraud or intentionally concealed or misrepresented any material fact or circumstance."

55. The Policy provides:

**2.      Duties in the Event of Occurrence, Offense, Claim or Suit**

    a.    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. . . . .

    . . . .

    b.    If a claim is made or "suit" is brought against any insured, you must:

        (1)    Immediately record the specifics of the claim or "suit" and the date received; and

        (2)    Notify us as soon as practicable.

        You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    c.    You and any other involved insured must:

        (1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        (2)    Authorize us to obtain records and other information;

        (3)    Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    . . . .

56. AmGUARD alleges that the Kihagi Defendant failed to comply with the conditions of the Policy including those cited above. The failure to notify AmGUARD of the *Duncan* Lawsuits prejudiced AmGUARD as it was unable to participate in strategic decisions

**AMGUARD'S THIRD PARTY COMPLAINT AND COUNTERCLAIM**

with regard to discovery or trial, and was prevented from participating in any mediation or settlement discussions and thus prevented from any attempts to resolve the matter short of trial.

57.     Therefore, AmGUARD seeks a declaration from this court that the failure to notify AmGUARD of the *Duncan* Lawsuits until after the judge entered judgment on the jury verdict, substantially prejudiced AmGUARD and relieves AmGUARD of any obligation to defend or indemnify the Kihagi Defendants in the *Duncan* Lawsuits.

58.     An actual controversy exists between AmGUARD, on the one hand, and defendants on the other, as AmGUARD contends that it is not obligated to pay for the defense and indemnity of the *Duncan* Lawsuits, whereas defendants contend to the contrary.  AmGUARD seeks a judicial determination that there is no coverage available under the Policy for the *Duncan* Lawsuits and that AmGUARD has no duty to pay for attorneys' fees and costs and for any judgment awarded against the Kihagi Defendants in the *Duncan* Lawsuits.

59.     A judicial declaration is necessary and appropriate at this time, under the circumstances, in order that the parties may ascertain their rights and duties under the Policy.

### FOURTH CAUSE OF ACTION FOR DECLARATORY RELIEF
### RE DUTY TO DEFEND AND INDEMNIFY *SMYTH* LAWSUITS

(Against Kihagi Defendants and Starr)

60.     AmGUARD realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 59, inclusive as though fully set forth herein.

61.     AmGUARD contends that it has no duty to defend the Kihagi Defendants with respect to the *Smyth* Lawsuits and that it has no duty to pay toward the settlement in the *Smyth* Lawsuits.  Among other things, there is no coverage under the Policy for personal and advertising injury that occurs prior to the inception of the Policy.  Second, there is no coverage under the Policy for civil fines, penalties and treble damages and Insurance Code section 533 bars coverage for loss resulting from the willful act of the insured.  Third, the Policy excludes coverage for personal and advertising injury caused by or at the direction of or with the consent or acquiescence of any insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."  Fourth, the voluntary payment provision

AMGUARD'S THIRD PARTY COMPLAINT AND COUNTERCLAIM

applies to bar coverage and AmGUARD has no duty to reimburse for defense fees and costs that were incurred prior to tender to AmGUARD.  Fifth, there is no coverage because the Kihagi Defendants failed to provide timely notice of the *Smyth* Lawsuits and failed to comply with the terms and conditions in the Policy.  In addition, under the terms of the Policy, the Policy is "void if any insured, whether before or after a loss, has committed fraud or intentionally concealed or misrepresented any material fact or circumstance."

62.     An actual controversy exists between AmGUARD, on the one hand, and defendants on the other, as AmGUARD contends that it is not obligated to pay for the defense and indemnity of the *Smyth* Lawsuits, whereas defendants contend to the contrary.  AmGUARD seeks a judicial determination that there is no coverage available under the Policy for the *Smyth* Lawsuits and that AmGUARD has no duty to pay for attorneys' fees and costs and for any settlement entered into in the *Smyth* Lawsuits.

63.     A judicial declaration is necessary and appropriate at this time, under the circumstances, in order that the parties may ascertain their rights and duties under the Policy.

WHEREFORE, AmGUARD Insurance Company prays for judgment against defendants named herein as follows:

1.     That the Court enter judgment on the First and Second Causes of Action declaring that:

(a)     Zoriall made material misrepresentations in the Application for the Policy;

(b)     AmGUARD reasonably and justifiably relied on the misrepresentations in issuing the Policy;

(c)     The Policy is rescinded and void *ab initio*;

(d)     The Policy affords no coverage for the *Smyth* Lawsuits and the *Duncan* Lawsuits;

(e)     That the insured is equitably required and ordered to place AmGUARD in the position that it would have been in if the Policy had not been issued based upon material misrepresentations and concealments of material fact, including but not limited to reimbursing AmGUARD for all attorneys' fees and costs it has incurred arising from the underlying claims referenced above and in this action in an amount to be established at trial.

2.      That the Court enter judgment on the Third Cause of Action declaring that:

(a)      AmGUARD was substantially prejudiced by the failure of the Kihagi Defendants to notify AmGUARD of the *Duncan* Lawsuits until after the court had entered judgment on a jury verdict in those cases; and

(b)      That AmGUARD has no duty or obligation to defend or indemnify the Kihagi Defendants in the *Duncan* Lawsuits.

3.      For a declaration that AmGUARD is not obligated to provide a defense with respect to the *Duncan* Lawsuits.

4.      For a declaration that AmGUARD has not duty to indemnify Zoriall, Kihagi and Mwangi with respect to the *Duncan* Lawsuits.

5.      For a declaration that AmGUARD has no duty to indemnify the judgment in the *Duncan* Lawsuits.

6.      For a declaration that AmGUARD is not obligated to provide a defense with respect to the *Smyth* Lawsuits.

7.      For a declaration that AmGUARD has no duty to indemnify Zoriall, Kihagi and Mwangi with respect to the *Smyth* Lawsuits.

8.      For a declaration that AmGUARD has no duty to indemnify the settlement in the *Smyth* Lawsuits.

9.      For attorneys' fees and costs of suit incurred herein to the extent permitted by law; and

10.      For such other and further relief as the Court may deem just and proper.

Dated: April 10, 2020                                   WESTON & McELVAIN LLP


                                        By:   **s/ Wynn C. Kaneshiro**
                                              Richard C. Weston
                                              Wynn C. Kaneshiro
                                              Attorneys for Defendant, Third Party
                                              Plaintiff and Counterclaimant
                                              **AmGUARD Insurance Company**

AMGUARD'S THIRD PARTY COMPLAINT AND COUNTERCLAIM

# EXHIBIT "A"



**Policy Information**

| | | | |
|---|---|---|---|
| **Policy Code:** | ZOBP601626 | **Carrier:** | AmGUARD Insurance Company |
| **Line of Business:** | Businessowner's | **Agency:** | ISU - PALOS VERDES INSURANCE ... |
| **Insured Name:** | Zoriall LLC | **Bill Type:** | Direct Bill |
| | | **Status:** | Issued on 07/21/2015 |
| **Policy Period:** | 7/20/2015-7/20/2016 | **Dec CA/UW:** | Laura Taylor |
| **Renewal Of:** | NEW | **Agy CA/UW:** | UW West Team |
| **Renewed By:** | ZOBP717380 | **Customer Number:** | BP01455088 |

**Lines of Business:** Businessowner's

**Show Tabs:** ☐ Notes & Diaries  ☐ Correspondence  ☐ Conversations   There are Notes and/or Diaries to review

| General Info | Coverages/Locations |
|---|---|
| Forms | |
| | **Underwriting Questions** |

## Policy Questions

### Policy Information Questions

| | |
|---|---|
| **Expiring Carrier:** | Other |
| **Expiring Premium:** | n/a |
| **Target Premium:** | n/a |
| **Does the prospect own or operate any other business?** | *(X) Yes( ) No |

**Please explain.**
*insured owns other income properties

### Liability Limits Questions

**Will you be selecting Hired and/or Non-owned Auto coverage for this prospect?**   *( ) Yes(X) No

### Notice of Insurance Related Practices

Personal information about you, including information from a credit report, may be collected from persons other than you in connection with this application for insurance and subsequent policy renewals. Such information as well as other personal and privileged information collected by us or our agents may in certain circumstances be disclosed to third parties without your authorization. You have the right to review your personal information in our files and can request correction of any inaccuracies. A more detailed description of your rights and our practices regarding such information is available upon request. Contact your agent or broker for instructions on how to submit a request to us.

If the insured cancels the policy, the final premium may be calculated on an other than pro rata basis. In that case, the amount of premium due to the insured will be 90% of the unearned premium and final premium will not be less than the full minimum premium.

Any person who knowingly and with intent to defraud any insurance company or another person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and subjects the person to criminal and [NY: substantial] civil penalties. (not applicable in CO, DC, FL, HI, MA, NE, OH, OK, OR, VT or WA; in LA, ME, TN and VA, insurance benefits may also be denied)

In the District of Columbia, Warning: it is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines.

In Florida, any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

In Massachusetts, Nebraska, Oregon and Vermont, any person who knowingly and with intent to defraud any insurance company or another person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading information concerning any fact material thereto, may be committing a fraudulent insurance act, which may be a crime and may subject the person to criminal and civil penalties.

In Washington, it is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines, and denial of insurance benefits.

THE PERSON PROVIDING THE INFORMATION SET FORTH ABOVE IS AN AUTHORIZED REPRESENTATIVE OF THE APPLICANT AND CERTIFIES THAT REASONABLE ENQUIRY HAS BEEN MADE TO OBTAIN THE ANSWERS TO QUESTIONS ON THIS APPLICATION. HE/SHE CERTIFIES THAT THE ANSWERS ARE TRUE, CORRECT AND COMPLETE TO THE BEST OF HIS/HER KNOWLEDGE.

I Agree:                                                            *[X]

## ACORD Questions - All questions need to be reviewed for accuracy

| Question | Answer |
|---|---|
| Are athletic teams sponsored? | *( ) Yes(X) No |
| Does the prospect subcontract work to others? | *( ) Yes(X) No |
| During the last five years, has any applicant been indicted for or convicted of any degree of the crime of fraud, bribery, arson or any other arson-related crime in connection with this or any other property? | *( ) Yes(X) No |
| Has the prospect had a foreclosure, repossession, bankruptcy, judgment or tax lien, business failure or any litigation during the past five (5) years? | *( ) Yes(X) No |
| Have there been any past losses or claims relating to sexual abuse or molestation allegations, discrimination or negligent hiring? | *( ) Yes(X) No |
| Are there any uncorrected fire code violations? | *( ) Yes(X) No |
| Are all employees licensed as required by law? | *(X) Yes( ) No |
| Has the prospect ever been fined by a federal, state or local governmental agency or entity related to any past or current business operations? | *( ) Yes(X) No |
| Does the prospect lease employees to or from other employers? | *( ) Yes(X) No |
| Is the applicant in full compliance with all life safety requirements and applicable building ordinances and laws? | *(X) Yes( ) No |
| Do/have past, present or discontinued operations involve(d) storing, treating, discharging, applying, disposing, or transporting of hazardous material? (E.g. landfills, wastes, fuel tanks, etc.): | *( ) Yes(X) No |
| Has the prospect had any losses in the past 4 years (current policy and prior 3 years)? | *( ) Yes(X) No |
| Has any policy or coverage been declined, cancelled or non-renewed during the prior three (3) years? **(Not applicable in Missouri - select "N/A" for MO prospects): | *( ) Yes(X) No( ) N/A |

## Location: 001 at 69 Hill St, San Francisco, CA 94110-2311

## Location Questions

| | |
|---|---|
| Is the risk within 1000 ft of a fire hydrant or other approved water source? | *(X) Yes( ) No |
| Is the risk within 5 road miles of a responding fire station? | *Y |
| Consecutive years in business at this location (in this current business): | *1 |
| Please describe industry management experience: | |
| *10 years experience with other income properties | |
| Is the prospect responsible for the maintenance of the property at this location? | *(X) Yes( ) No |
| Does the prospect have a property maintenance agreement in place including snow removal from the parking lot, walkway, and roof? | *(X) Yes( ) No |

## Location Deductibles Questions

| | |
|---|---|
| Property Deductible: | *2500 |
| Territory: | *013 |

# EXHIBIT "B"



**BUSINESSOWNER'S POLICY DECLARATIONS**

**AmGUARD Insurance Company**
**A Stock Company**

**Issued:** 07/21/2015

| | |
|---|---|
| **Policy No.:** ZOBP601626 | **Renewal of:** NEW |

## POLICY INFORMATION PAGE

**[1]    Named Insured and Mailing Address**
Zoriall LLC
PO Box 691889
West Hollywood, CA 90069

**[2]    Agency**
ISU - PALOS VERDES INSURANCE AGENCY
314 Vista Del Mar
PO Box 636
Redondo Beach, CA 90277

**[3]    Policy Period**
From July 20, 2015 to July 20, 2016, 12:01 AM, standard time at the insured's mailing address.

**[4]    Description of Business**
Residential Property Managers

**[5]    Coverage**
This policy consists of the Coverage Forms listed on the **Schedule of Forms and Endorsements (IIT SF 01 05)**.

**[6]    Premium**
The premium shown below may be subject to adjustment.

| | |
|---|---|
| Certified Acts of Terrorism - Fire Only | $108.00 |
| TOTAL POLICY PREMIUM | $1,908.00 |
| TOTAL PAYABLE | $1,908.00 |

**[7]    Payment of Premium**
In return for your payment of premium, and subject to all terms of this policy, we agree with you to provide insurance as stated in this policy.



**GUARD**
**INSURANCE**
**GROUP**
*a Berkshire Hathaway company*

**BUSINESSOWNER'S POLICY
DECLARATIONS**

Issued:  07/21/2015

Policy No.:  ZOBP601626                                    **Effective Date:**   07/20/2015

## SECTION I – PROPERTY COVERAGES AND LIMITS OF INSURANCE

**LOCATION:  001   BUILDING:  001
69 Hill St
San Francisco, CA 94110-2311
San Francisco County**

**Property Deductible: $2,500
Wind/Hail Deductible: N/A
Optional Coverages/Glass Deductible: $500
Classification: 65146 - Apartment Buildings - Over 4 families - NO office occupancy**

**MANDATORY COVERAGES:**

**Building**
   **Limit of Insurance  $831,000**
   **Valuation    Replacement Cost**
   **Coverage Includes:**
      **Automatic Increase - Building limit applies up to 2% per year**

**OPTIONAL COVERAGES:**

| | |
|---|---|
| **Awnings Coverage** | |
| Limit | $2,500 |
| **Building Coverage** | |
| Limit | $831,000 |
| Valuation | Replacement Cost |
| Inflation Guard % | 2 |
| **Liability** | |
| Limit | Included |
| **Accounts Receivable** | |
| On-Premises Limit | $25,000 |
| Off-Premises Limit | 25,000 |
| **Apartment Buildings Coverage** | |
| Pollutant Clean-Up and Removal | $25,000 |
| Reward Payment | Up to $5,000 |
| Ordinance or Law - Equipment Coverage | Building/BPP Limit |
| Lock Replacement | $5,000 per occurrence |
| Tenant Move Back Expenses | $15,000 per occurrence |
| Tenants' Property Legal Liability Coverage | $10,000 per occurrence |
| Lock-Out or Sale, Removal and Disposal Liability Coverage | $5,000 |
| Heating or Air Conditioning Loss Reimbursement Coverage | $5,000/$10,000 |
| **Debris Removal** | |
| Limit | 25%/$10,000 |
| **Money and Securities** | |
| On Premises Limit | $5,000 |

**BUSINESSOWNER'S POLICY
DECLARATIONS**

Issued:  07/21/2015

---

**Policy No.:**   ZOBP601626                                    **Effective Date:**   07/20/2015

---

| | |
|---|---|
| Off Premises Limit | $5,000 |
| **Ordinance or Law** | |
| Coverage Type | Coverage 1, 2 & 3 Combined |
| Cvg 1 (Loss in Value of Undamaged Portion of Bldg) Limit | $831,000 |
| Cvg 2 (Demolition Cost) & Cvg 3 (Increased Cost of Construction) Limit | $100,000 |
| **Outdoor Property** | |
| Limit | $10,000 |
| **Outdoor Signs - Optional Coverage** | |
| Limit | $5,000 |
| **Valuable Papers and Records** | |
| On-Premises Limit | $25,000 |
| Off-Premises Limit | $25,000 |
| **Water Back-up and Sump Overflow** | |
| Covered Property Limit | $25,000 |
| Business Income and Extra Expense Limit | $25,000 |

---

**BUSINESSOWNER'S POLICY
DECLARATIONS**

Issued:  07/21/2015

**Policy No.:**  ZOBP601626                                    **Effective Date:**  07/20/2015

### SECTION II – LIABILITY COVERAGES AND LIMITS OF INSURANCE

**Each paid claim for the following coverages reduces the amount of insurance we provide during the applicable annual period.  Please refer to Section II – Liability in the Businessowners Coverage form and any attached endorsements.**

| Coverage | Limits of Insurance |
|---|---|
| Liability and Medical Expenses - Each Occurrence | $1,000,000 |
| General Aggregate (Other than Products and Completed Operations) | $2,000,000 |
| Products & Completed Operations Aggregate | $2,000,000 |
| Medical Expenses (Each Person) | $5,000 |
| Liability Property Damage Deductible | None |
| Liability Deductible - Bodily Injury | None |

**BUSINESSOWNER'S POLICY
DECLARATIONS**

Issued:  07/21/2015

---

**Policy No.:**  ZOBP601626                                    **Effective Date:**  07/20/2015

---

### POLICY WIDE COVERAGES AND LIMITS OF INSURANCE

**Appurtenant Structures**
| | |
|---|---|
| Limit | $50,000 combined Building/BPP |

**Business Income & Extra Expense**
| | |
|---|---|
| Limit | ALS UP TO 12 MONTHS |

**Damage To Premises Rented To You**
| | |
|---|---|
| Limit | $50,000 |

**Electronic Data**
| | |
|---|---|
| Limit | $10,000 |

**Employee Dishonesty**
| | |
|---|---|
| Limit | $10,000 |

**Fire Department Service Charge**
| | |
|---|---|
| Limit | $25,000 |

**Fire Extinguisher Systems Recharge Expense**
| | |
|---|---|
| Limit | $5,000 |

**Forgery or Alteration**
| | |
|---|---|
| Limit | $10,000 |

**Fungi, Wet Rot, Dry Rot & Bacteria (Mold)**
| | |
|---|---|
| Property Limit | $15,000 |
| Business Income/EE Number of Days | 30 |
| Liability Coverage Option | Exclude Coverage |

**Glass Expense**
| | |
|---|---|
| Limit | Actual Loss Sustained |

**Interruption of Computer Operations**
| | |
|---|---|
| Limit | $10,000 |

**Loss by Theft of furs, fur garments, garments trimmed with fur**
| | |
|---|---|
| Limit | $2,500 |

**Loss by Theft of jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals**
| | |
|---|---|
| Limit | $5,000 |

**Loss by Theft of patterns, dies, molds and forms**
| | |
|---|---|
| Limit | $2,500 |

**Money Orders and "Counterfeit Money"**
| | |
|---|---|
| Limit | $1,000 |

**Newly Acquired Or Constructed Property - Buildings**
| | |
|---|---|
| Limit | 25% of Building Limit/Not more than $500,000/Bldg |

**Newly Acquired Or Constructed Property - Business Personal Property**
| | |
|---|---|
| Limit | $250,000 |

**Personal Effects**
| | |
|---|---|
| Limit | $5,000 |

**Personal Property Off Premises**
| | |
|---|---|
| Limit | $10,000 |

**Pollutant Clean Up and Removal**
| | |
|---|---|
| Limit | $10,000 |

**Preservation of Property**
| | |
|---|---|
| Limit | Within 30 Days |

**Terrorism**
| | |
|---|---|
| Certified Acts | Exclude Coverage |

**Exhibit B
Page 27**

**BUSINESSOWNERS POLICY
DECLARATIONS**

Issued:  07/21/2015

**Policy No.:**  ZOBP601626                                       **Effective Date:**  07/20/2015

**SCHEDULE OF FORMS AND ENDORSEMENTS**

| Form Number | Title |
|---|---|
| IIT DS 01 05 | Businessowners Policy Declarations |
| BP 00 03 01 10 | Businessowners Coverage Form |
| BP IN 01 01 10 | Businessowners Coverage Form Index |
| END SCHD | Schedule Of Forms And Endorsements |
| IL 99 00 08 13 | Authorization and Attestation |
| IL P 001 01 04 | U.S. Treasury Department's Office Of Foreign Assets Control ("OFAC") Advisory Notice To Policyholder |
| PRIV POL | Privacy Policy |
| BP 99 CA 12 11 | CA Policy Customizations |
| BP 01 55 09 12 | California Changes |
| BP 99 75 05 13 | California Changes -Cancellation Premium Due |
| BP DS 02 08 06 | Apartment Buildings Supplemental Schedule |
| BP 04 09 01 06 | Additional Insured - Mortgagee, Assignee, or Receiver |
| BP 04 12 01 06 | Limitation Of Coverage To Designated Premises Or Project |
| BP 04 17 01 10 | Employment - Related Practices Exclusion |
| BP 05 01 07 02 | Calculation Of Premium |
| BP 05 24 01 15 | Exclusion Of Certified Acts Of Terrorism |
| BP 05 41 01 15 | Exclusion of Certified Acts of Terrorism and Exclusion of Other Acts of Terrorism Committed Outside the United States |
| BP 05 42 01 15 | Exclusion Of Punitive Damages Related To A Certified Act Of Terrorism |
| BP 06 46 04 06 | California Ordinance or Law Coverage |
| BP 07 75 01 10 | Apartment Buildings |
| BP 12 03 01 10 | Loss Payable Clauses |
| BP 99 09 01 10 | Fungi or Bacteria Coverage Exclusion |
| BP 99 10 09 08 | Exclusion – Liability for Hazards of Lead |
| BP 99 60 03 12 | Water Back-up and Sump Overflow |

# EXHIBIT "C"

Exhibit C
Page 29



## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO

# Document Scanning Lead Sheet

Oct-17-2017 4:22 pm

Case Number: CGC-15-545655

Filing Date: Oct-17-2017 3:30

Filed by: CLARK BANAYAD

Image: 06068548

JUDGMENT ON VERDICT

DALE DUNCAN ET AL VS. ANNE KIHAGE ET AL

001C06068548

**Instructions:**
Please place this sheet on top of the document to be scanned.

Exhibit C
Page 30



F I L E D
Superior Court of California
County of San Francisco

OCT 17 2017

CLERK OF THE COURT
BY: _____
Deputy Clerk

1

2

3

4

5

6            SUPERIOR COURT OF THE STATE OF CALIFORNIA

7            COUNTY OF SAN FRANCISCO, UNLIMITED JURISDICTION

8

9    DALE DUNCAN, MARTA MUNOZ      )    CIVIL CASE NO. CGC 15-545655
     MENDOZA,                     )
                                  )    *Ac*
10              Plaintiffs,       )    [Proposed ]JUDGMENT ON JURY
                                  )    VERDICT
11        vs.                     )
                                  )    Trial Date:
12                                )        August 29, 2017 – October 5, 2017
     ANNE KIHAGI (aka ANNE KIHAGI-)    Dept: 606
13   SWAIN, ANNE SWAIN, ANNA KIHAGI,)
     ANNA KIHAGI-SWAIN, ANNA SWAIN),)
14   ZORIALL LLC, CHRISTINA MWANGI,)
     and DOES 1- 10, inclusive,   )
15                                )
                Defendants.       )
16   _____)

17

18        This action came on regularly for trial on August 29, 2017, with trial continuing on

19   subsequent days, until and including October 5, 2017, in Department 606 of the Superior

20   Court, the Hon. Andrew Y. S. Cheng, Judge, presiding; the plaintiffs appearing by

21   attorneys Steven J. McDonald and Ariel Gershon, and the defendants appearing by

22   attorneys Richard Diestel and Karen Uchiyama.

23        The action was previously consolidated with actions by other plaintiffs against these

24   defendants and with cross-actions and related actions by the defendants, but the

25   consolidated action was then severed by the Court at the time of trial, such that only the

26   claims of DALE DUNCAN and MARTA MUNOZ MENDOZA against the defendants (stated

27

28

-1-

Exhibit C
Page 31

1  in their 2nd Amended Complaint of September 9, 2017) were at trial herein. This

2  Judgment resolves those claims of DALE DUNCAN and MARTA MUNOZ MENDOZA

3  against the defendants herein. The claims of other plaintiffs and the cross-claims and the

4  related actions of the defendants (previously consolidated herein) are not reflected in this

5  judgment and they remain pending.

6         A jury of 12 persons was regularly impaneled and sworn.  Witnesses were sworn

7  and testified, and evidence presented.

8         After hearing the evidence and arguments of counsel, the jury was duly instructed

9  by the Court and the cause was submitted to the jury with directions to return verdict on

10  six special verdict forms (one respective set of forms each, for the claims of the two

11  plaintiffs -- DALE DUNCAN and MARTA MUNOZ MENDOZA -- against the three

12  defendants -- ANNE KIHAGI (aka ANNE KIHAGI-SWAIN, ANNE SWAIN, ANNA KIHAGI,

13  ANNA KIHAGI-SWAIN, ANNA SWAIN), ZORIALL LLC, and CHRISTINA MWANGI).  The

14  Jury deliberated and thereafter returned into court with its verdict, which is attached hereto

15  as Exhibit A:

16         It appearing by reason of said verdict, and per the provisions of San Francisco

17  Administrative Code Sections 37.9(f) and 37.10B(c)(5), which provides for money

18  damages of not less than three times actual damages to prevailing plaintiffs suing in civil

19  court for harms caused by violation of the San Francisco Rent Ordinance, San Francisco

20  Administrative Code Sections 37.9 and 37.10B, respectively, and per the provisions

21  therein that an award of damages for mental or emotional distress shall likewise be trebled

22  on a factual finding that the landlord acted in knowing violation of or in reckless disregard

23  of the Ordinance, that:

24         Plaintiff DALE DUNCAN is entitled to judgment against Defendant ANNE KIHAGI in

25  the amount of three times (3X) $196,000.00, for a total of $588,000.00;

26         Plaintiff DALE DUNCAN is entitled to judgment against Defendant ZORIALL LLC in

27

28 ──────────────────────────────────────

Exhibit C
Page 32

1   the amount of three times (3X) $196,000.00, for a total of $588,000.00;

2        Plaintiff DALE DUNCAN is entitled to judgment against Defendant CHRISTINA

3   MWANGI in the amount of three times (3X) $196,000.00, for a total of $588,000.00;

4        Plaintiff MARTA MUNOZ MENDOZA is entitled to judgment against Defendant

5   ANNE KIHAGI in the amount of three times (3X) $196,000.00, for a total of

6   $588,000.00;

7        Plaintiff MARTA MUNOZ MENDOZA is entitled to judgment against Defendant

8   ZORIALL LLC in the amount of three times (3X) $196,000.00, for a total of

9   $588,000.00;

10       Plaintiff MARTA MUNOZ MENDOZA is entitled to judgment against Defendant

11   CHRISTINA MWANGI in the amount of three times (3X) $196,000.00, for a total of

12   $588,000.00.

13       NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that plaintiffs

14   have and recover from said defendants the sum of $3,528,000.00 -- as follows: Plaintiff

15   DALE DUNCAN shall have and recover $588,000.00 from Defendant ANNE KIHAGI;

16   Plaintiff DALE DUNCAN shall have and recover $588,000.00 from Defendant ZORIALL

17   LLC; Plaintiff DALE DUNCAN shall have and recover $588,000.00 from Defendant

18   CHRISTINA MWANGI; Plaintiff MARTA MUNOZ MENDOZA shall have and recover

19   $588,000.00 from Defendant ANNE KIHAGI; Plaintiff MARTA MUNOZ MENDOZA shall

20   have and recover $588,000.00 from Defendant ZORIALL LLC; Plaintiff MARTA MUNOZ

21   MENDOZA shall have and recover $588,000.00 from Defendant CHRISTINA MWANGI; −

22   with interest thereon at the rate of ten percent (10%) per annum from the date of the

23   entry of this judgment until paid, together with all appropriate costs and disbursements, if

24   any, to be awarded on timely application of the prevailing parties.

25   Date:  10/17/2017                    Andrew J.S. Cheng

26                                       ANDREW Y.S. CHENG

                                         Judge of the Superior Court

27

28   _____
                              -3-

Exhibit C
Page 33

# EXHIBIT A

Exhibit C
Page 34



**F I L E D**
Superior Court of California
County of San Francisco

OCT 5 - 2017

CLERK OF THE COURT
BY: _____
                    Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

| | |
|---|---|
| DALE DUNCAN, MARTA MUNOZ MENDOZA, | Case No.  CGC-15-545655 |
| Plaintiffs, | **SPECIAL VERDICT FORM** |
| v. | |
| ANNE KIHAGI, ZORRIALL LLC, CHRISTINA MWANGI,, | |
| Defendants. | |

**Exhibit C**
**Page 35**

## Special Verdict Form – Dale Duncan v. Christina Mwangi

### Wrongful Eviction in Violation of San Francisco Rent Ordinance Section 37.9

1. Did Christina Mwangi endeavor to recover possession or recover possession of the Subject Unit in bad faith, with ulterior reasons, or without honest intent?

   Answer "Yes" or "No": _____

2. Was Christina Mwangi's dominant motive in recovering possession to use or occupy the Subject Unit as her principal residence for a period of at least 36 continuous months?

   Answer "Yes" or "No": _____

If you answered "Yes" to Question 1 or if you answered "No" to Question 2, continue to Question 3. Otherwise, skip Questions 3-4, and go to Question 5.

3. What are Dale Duncan's damages for wrongful eviction in violation of San Francisco Rent Ordinance section 37.9?

   Economic damages:

        a.  Moving costs:                        $ _0_____

        b.  Lost rental value after termination of tenancy:    $ _150,000_

        c.  Other economic losses:               $ _0_____

   Non-economic Damages:

        d.  Past mental or emotional damages:      $ _30,000_

Continue to Question 4.

4. When endeavoring to recover possession or when recovering possession of the Subject Unit, did Christina Mwangi act in knowing violation of or in reckless disregard of the San Francisco Rent Ordinance?

   Answer "Yes" or "No": _____

Continue to Question 5.

**Exhibit C**
**Page 36**

<u>Violation of San Francisco Rent Ordinance Section 37.10B</u>

5.  Did Christina Mwangi violate San Francisco Rent Ordinance section 37.10B by a forbidden act or omission against Dale Duncan?

    Answer "Yes" or "No": _____

If you answered "Yes" to Question 5, continue to Question 6. Otherwise, skip Questions 6-8.

6.  Was Christina Mwangi's forbidden act or omission against Dale Duncan done in bad faith?

    Answer "Yes" or "No": _____

If you answered "Yes" to Question 6, continue to Question 7. Otherwise, skip Questions 7-8.

7.  What are Dale Duncan's damages for violation of San Francisco Rent Ordinance section 37.10B?

    Economic damages:

    a.  Lost rental value during tenancy:          $ 1,000

    Non-economic Damages:

    b.  Past mental or emotional damages:          $ 15,000

Continue to Question 8.

8.  Was Christina Mwangi's forbidden act or omission against Dale Duncan done in knowing violation of or in reckless disregard of the San Francisco Rent Ordinance?

    Answer "Yes" or "No": _____

Signed: _____
        Presiding Juror

Dated: Oct. 5, 2017

**Exhibit C**
**Page 37**

## Special Verdict Form – Dale Duncan v. Anne Kihagi

### Wrongful Eviction in Violation of San Francisco Rent Ordinance Section 37.9

1. Did Anne Kihagi endeavor to recover possession or recover possession of the Subject Unit?

   Answer "Yes" or "No": _____

   If you answered Question 1 "No," then go to Question 5.  If you answered Question 1 "Yes," then go to Question 2.

2. Did Anne Kihagi wrongfully endeavor to recover possession or recover possession of Dale Duncan's rental unit in violation of the San Francisco Rent Ordinance 37.9?

   Answer "Yes" or "No": _____

   If you answered "Yes" to Question 2, continue to Question 3. Otherwise, skip Questions 3-4, and go to Question 5.

3. What are Dale Duncan's damages for wrongful eviction in violation of San Francisco Rent Ordinance section 37.9?

   Economic damages:

   a. Moving costs:                                     $ 0

   b. Lost rental value after termination of tenancy:  $ 150,000

   c. Other economic losses:                           $ 0

   Non-economic Damages:

   d. Past mental or emotional damages:                $ 30,000

Continue to Question 4.

4. When endeavoring to recover possession or when recovering possession of the Subject Unit, did Anne Kihagi act in knowing violation of or in reckless disregard of the San Francisco Rent Ordinance?

   Answer "Yes" or "No": _____

Continue to Question 5.

**Exhibit C**
**Page 38**

<u>Violation of San Francisco Rent Ordinance Section 37.10B</u>

5. Did Anne Kihagi violate San Francisco Rent Ordinance section 37.10B by a forbidden act or omission against Dale Duncan?

   Answer "Yes" or "No": _____

If you answered "Yes" to Question 5, continue to Question 6. Otherwise, skip Questions 6-8.

6. Was Anne Kihagi's forbidden act or omission against Dale Duncan done in bad faith?

   Answer "Yes" or "No": _____

If you answered "Yes" to Question 6, continue to Question 7. Otherwise, skip Questions 7-8.

7. What are Dale Duncan's damages for violation of San Francisco Rent Ordinance section 37.10B?

   Economic damages:

   a. Lost rental value during tenancy:                    $ 1,000

   Non-economic Damages:

   b. Past mental or emotional damages:                    $ 15,000

Continue to Question 8.

8. Was Anne Kihagi's forbidden act or omission against Dale Duncan done in knowing violation of or in reckless disregard of the San Francisco Rent Ordinance?

   Answer "Yes" or "No": _____

Signed: _Meghan Pewe Le_____
        Presiding Juror

Dated: _Oct. 5, 2017_____

**Exhibit C**
**Page 39**

## Special Verdict Form – Dale Duncan v. Zoriall LLC

### Wrongful Eviction in Violation of San Francisco Rent Ordinance Section 37.9

1. Did Zoriall LLC endeavor to recover possession or recover possession of the Subject Unit?

   Answer "Yes" or "No": _____

   If you answered Question 1 "No," then go to Question 5. If you answered Question 1 "Yes," then go to Question 2.

2. Did Zoriall LLC wrongfully endeavor to recover possession or recover possession of Dale Duncan's rental unit in violation of the San Francisco Rent Ordinance 37.9?

   Answer "Yes" or "No": _____

If you answered "Yes" to Question 2, continue to Question 3. Otherwise, skip Questions 3-4, and go to Question 5.

3. What are Dale Duncan's damages for wrongful eviction in violation of San Francisco Rent Ordinance section 37.9?

   Economic damages:

       a. Moving costs:      $ _0_

       b. Lost rental value after termination of tenancy:    $ 150,000

       c. Other economic losses:      $ _0_

   Non-economic Damages:

       d. Past mental or emotional damages:    $ 30,000

Continue to Question 4.

4. When endeavoring to recover possession or when recovering possession of the Subject Unit, did Zoriall LLC act in knowing violation of or in reckless disregard of the San Francisco Rent Ordinance?

   Answer "Yes" or "No": _____

Continue to Question 5.

**Exhibit C**
**Page 40**

<u>Violation of San Francisco Rent Ordinance Section 37.10B</u>

5. Did Zoriall LLC violate San Francisco Rent Ordinance section 37.10B by a forbidden act or omission against Dale Duncan?

    Answer "Yes" or "No": _____

If you answered "Yes" to Question 5, continue to Question 6. Otherwise, skip Questions 6-8.

6. Was Zoriall LLC's forbidden act or omission against Dale Duncan done in bad faith?

    Answer "Yes" or "No": _____

If you answered "Yes" to Question 6, continue to Question 7. Otherwise, skip Questions 7-8.

7. What are Dale Duncan's damages for violation of San Francisco Rent Ordinance section 37.10B?

    Economic damages:

        a.  Lost rental value during tenancy:        $ 1,000

    Non-economic Damages:

        b.  Past mental or emotional damages:      $ 15,000

Continue to Question 8.

8. Was Zoriall LLC's forbidden act or omission against Dale Duncan done in knowing violation of or in reckless disregard of the San Francisco Rent Ordinance?

    Answer "Yes" or "No": _____

Signed: _____
      Presiding Juror

Dated: _Oct. 5, 2017_

**Exhibit C**
**Page 41**

### Special Verdict Form – Marta Mendoza v. Christina Mwangi

### Wrongful Eviction in Violation of San Francisco Rent Ordinance Section 37.9

1. Did Christina Mwangi endeavor to recover possession or recover possession of the Subject Unit in bad faith, with ulterior reasons, or without honest intent?

   Answer "Yes" or "No": _____

2. Was Christina Mwangi's dominant motive in recovering possession to use or occupy the Subject Unit as her principal residence for a period of at least 36 continuous months?

   Answer "Yes" or "No": _____

If you answered "Yes" to Question 1 or if you answered "No" to Question 2, continue to Question 3. Otherwise, skip Questions 3-4, and go to Question 5.

3. What are Marta Mendoza's damages for wrongful eviction in violation of San Francisco Rent Ordinance section 37.9?

   Economic damages:

   a. Moving costs:                                    $ _____Ø_____

   b. Lost rental value after termination of tenancy:  $ _150, 000_

   c. Other economic losses:                           $ __Ø___

   Non-economic Damages:

   d. Past mental or emotional damages:                $_30,000_

Continue to Question 4.

4. When endeavoring to recover possession or when recovering possession of the Subject Unit, did Christina Mwangi act in knowing violation of or in reckless disregard of the San Francisco Rent Ordinance?

   Answer "Yes" or "No": _____

Continue to Question 5.

**Exhibit C**
**Page 42**

<u>Violation of San Francisco Rent Ordinance Section 37.10B</u>

5.  Did Christina Mwangi violate San Francisco Rent Ordinance section 37.10B by a forbidden act or omission against Marta Mendoza?

    Answer "Yes" or "No": _____

If you answered "Yes" to Question 5, continue to Question 6. Otherwise, skip Questions 6-8.

6.  Was Christina Mwangi's forbidden act or omission against Marta Mendoza done in bad faith?

    Answer "Yes" or "No": _____

If you answered "Yes" to Question 6, continue to Question 7. Otherwise, skip Questions 7-8.

7.  What are Marta Mendoza's damages for violation of San Francisco Rent Ordinance section 37.10B?

    Economic damages:

        a.  Lost rental value during tenancy:      $ 1,000

    Non-economic Damages:

        b.  Past mental or emotional damages:      $ 15,000

Continue to Question 8.

8.  Was Christina Mwangi's forbidden act or omission against Marta Mendoza done in knowing violation of or in reckless disregard of the San Francisco Rent Ordinance?

    Answer "Yes" or "No": _____

Signed: _Meghan Reuwer_____
        Presiding Juror

Dated: _Oct. 5, 2017_____

**Exhibit C**
**Page 43**

## Special Verdict Form – Marta Mendoza v. Anne Kihagi

### Wrongful Eviction in Violation of San Francisco Rent Ordinance Section 37.9

1.  Did Anne Kihagi endeavor to recover possession or recover possession of the Subject Unit?

    Answer "Yes" or "No": _____

    If you answered Question 1 "No," then go to Question 5.  If you answered Question 1 "Yes," then go to Question 2.

2.  Did Anne Kihagi wrongfully endeavor to recover possession or recover possession of Marta Mendoza's rental unit in violation of the San Francisco Rent Ordinance 37.9?

    Answer "Yes" or "No": _____

If you answered "Yes" to Question 2, continue to Question 3. Otherwise, skip Questions 3-4, and go to Question 5.

3.  What are Marta Mendoza's damages for wrongful eviction in violation of San Francisco Rent Ordinance section 37.9?

    Economic damages:

    a.  Moving costs:                                  $ _0_

    b.  Lost rental value after termination of tenancy:  $ _150,000_

    c.  Other economic losses:                          $ _0_

    Non-economic Damages:

    d.  Past mental or emotional damages:               $ _30,000_

Continue to Question 4.

4.  When endeavoring to recover possession or when recovering possession of the Subject Unit, did Anne Kihagi act in knowing violation of or in reckless disregard of the San Francisco Rent Ordinance?

    Answer "Yes" or "No": _____

Continue to Question 5.

**Exhibit C**
**Page 44**

<u>Violation of San Francisco Rent Ordinance Section 37.10B</u>

5. Did Anne Kihagi violate San Francisco Rent Ordinance section 37.10B by a forbidden act or omission against Marta Mendoza?

   Answer "Yes" or "No": _____

If you answered "Yes" to Question 5, continue to Question 6. Otherwise, skip Questions 6-8.

6. Was Anne Kihagi's forbidden act or omission against Marta Mendoza done in bad faith?

   Answer "Yes" or "No": _____

If you answered "Yes" to Question 6, continue to Question 7. Otherwise, skip Questions 7-8.

7. What are Marta Mendoza's damages for violation of San Francisco Rent Ordinance section 37.10B?

   Economic damages:

       a.  Lost rental value during tenancy:      $1,000

   Non-economic Damages:

       b.  Past mental or emotional damages:      $15,000

Continue to Question 8.

8. Was Anne Kihagi's forbidden act or omission against Marta Mendoza done in knowing violation of or in reckless disregard of the San Francisco Rent Ordinance?

   Answer "Yes" or "No": _____

Signed: _Melissa Recci Re_____
     Presiding Juror

Dated: _Oct. 5, 2017_

**Exhibit C**
**Page 45**

**Special Verdict Form – Marta Mendoza v. Zoriall LLC**

Wrongful Eviction in Violation of San Francisco Rent Ordinance Section 37.9

1. Did Zoriall LLC endeavor to recover possession or recover possession of the Subject Unit?

   Answer "Yes" or "No": _____

   If you answered Question 1 "No," then go to Question 5.  If you answered Question 1 "Yes," then go to Question 2.

2. Did Zoriall LLC wrongfully endeavor to recover possession or recover possession of Marta Mendoza's rental unit in violation of the San Francisco Rent Ordinance 37.9?

   Answer "Yes" or "No": _____

If you answered "Yes" to Question 2, continue to Question 3. Otherwise, skip Questions 3-4, and go to Question 5.

3. What are Marta Mendoza's damages for wrongful eviction in violation of San Francisco Rent Ordinance section 37.9?

   Economic damages:

   a. Moving costs:                                    $ _∅_____

   b. Lost rental value after termination of tenancy:  $ _150, 000__

   c. Other economic losses:                           $ _∅_____

   Non-economic Damages:

   d. Past mental or emotional damages:                $ _30, 000__

Continue to Question 4.

4. When endeavoring to recover possession or when recovering possession of the Subject Unit, did Zoriall LLC act in knowing violation of or in reckless disregard of the San Francisco Rent Ordinance?

   Answer "Yes" or "No": _____

Continue to Question 5.

**Exhibit C**
**Page 46**

<u>Violation of San Francisco Rent Ordinance Section 37.10B</u>

5.  Did Zoriall LLC violate San Francisco Rent Ordinance section 37.10B by a forbidden act or omission against Marta Mendoza?

    Answer "Yes" or "No": _____

If you answered "Yes" to Question 5, continue to Question 6. Otherwise, skip Questions 6-8.

6.  Was Zoriall LLC's forbidden act or omission against Marta Mendoza done in bad faith?

    Answer "Yes" or "No": _____

If you answered "Yes" to Question 6, continue to Question 7. Otherwise, skip Questions 7-8.

7.  What are Marta Mendoza's damages for violation of San Francisco Rent Ordinance section 37.10B?

    Economic damages:

    a.  Lost rental value during tenancy:               $ 1,000

    Non-economic Damages:

    b.  Past mental or emotional damages:               $ 15,000

Continue to Question 8.

8.  Was Zoriall LLC's forbidden act or omission against Marta Mendoza done in knowing violation of or in reckless disregard of the San Francisco Rent Ordinance?

    Answer "Yes" or "No": _____

Signed: _Meham Reeew Le_
　　　　Presiding Juror

Dated: _Oct. 5, 2017_

**Exhibit C**
**Page 47**

*Starr Indemnity & Liability Company v. AmGUARD Insurance Company*
USDC-CAND, Case No. 4:20-cv-959-SI

**PROOF OF SERVICE**

I, Regina Macleod, declare:

I am employed in the County of Los Angeles, state of California.  I am over the age of 18 and not a party to the within action; my business address is 1960 East Grand Avenue, Suite 400, El Segundo, California 90245.

On April 10, 2020, I served a copy of the following document:

**THIRD PARTY PLAINTIFF AND COUNTERCLAIMANT AMGUARD**

**INSURANCE COMPANY'S THIRD PARTY COMPLAINT AND**

**COUNTERCLAIM FOR RESCISSION AND DECLARATORY RELIEF**

By electronically filing the foregoing document with the Clerk of the United States District Court, Northern District of California, using its ECF system, which electronically notifies the persons on the attached service list at the email addresses registered with the ECF System.

I declare under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on April 10, 2020 at Hawthorne, California.

Regina Macleod

1

*Starr Indemnity & Liability Company v. AmGUARD Insurance Company*
USDC-CAND, Case No. 4:20-cv-959-SI

<u>**SERVICE LIST**</u>

| | |
|---|---|
| Mary E. McPherson<br>**TRESSLER LLP**<br>2 Park Plaza, Suite 1050<br>Irvine, California 92614<br>Telephone:     (949) 336-1224<br>Facsimile:     (949) 752-0645<br>E-mail:          mmcpherson@tresslerllp.com | *Attorneys for Plaintiff,*<br>Starr Indemnity & Liability<br>Company |

2