1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    STARR INDEMNITY & LIABILITY            Case No. 20-cv-00959-SI
     COMPANY,
8
                  Plaintiff,
9                                           FINDINGS OF FACT AND
           v.                               CONCLUSIONS OF LAW ON PHASE 1
10                                          OF BENCH TRIAL
     AMGUARD INSURANCE COMPANY,
11
                  Defendant.
12

13

14   ------------------------------------------------

15   AMGUARD INSURANCE COMPANY,

16                  Third Party Plaintiff and

17   Counterclaimant,

18           v.

19   STARR INDEMNITY & LIABILITY
     COMPANY, *et al.*,
20
                  Third Party Defendants and
21   Counter-Defendant.

22

23        This matter came before the Court for Phase I of a bench trial, which was held on April 11-

24   13, 2022.  Plaintiff and counter-defendant Starr Indemnity & Liability Company ("Starr") asserts

25   claims for declaratory relief, equitable contribution, equitable subrogation and equitable indemnity

26   against defendant and third party plaintiff and counterclaimant AmGUARD Insurance Company

27   ("AmGUARD").  Starr and AmGUARD issued policies to Zoriall LLC covering different time

28   periods, and Starr seeks a declaration that AmGUARD had a duty to defend Zoriall LCC in four

lawsuits brought against Zoriall LLC and its members, Anne Kihagi and Christine Mwangi.

AmGUARD filed a Counterclaim against Starr and a Third Party Complaint against Zoriall LLC, Kihagi, Mwangi, Dale Duncan, and Marta Munoz Mendoza. AmGUARD's Counterclaim and Third Party Complaint seek to rescind the policy AmGUARD issued to Zoriall based on a misrepresentation in Zoriall's insurance application. AmGUARD also seeks declaratory relief regarding its defense and indemnity obligation, and AmGUARD asserts numerous affirmative defenses to Starr's claims.

This Court bifurcated the bench trial with Phase I focused on AmGUARD's claim for rescission and affirmative defenses of misrepresentation, fraud, and concealment, as well as Starr's defenses thereto. In accordance with Federal Rule of Civil Procedure 52(a), the Court now makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

### I.      Zoriall LLC's Application for Insurance with AmGUARD

In 2015, Zoriall LLC ("Zoriall") owned an apartment building located at 69 Hill Street in San Francisco, California ("Hill Street Property"). Anne Kihagi has been the managing member of Zoriall since its formation in approximately 2014 to the present, and she is the person responsible for obtaining insurance policies for Zoriall. The other member of Zoriall is Kihagi's sister, Christine Mwangi. Zoriall, Kihagi and Mwangi are referred to as the "Zoriall defendants."

ISU Palos Verdes Insurance Agency ("PV Insurance") is an independent insurance agency. PV Insurance has appointments with multiple insurance carriers, and it is not a captive agent for any one insurance carrier. In 2015, PV Insurance had relationships with approximately 25 insurance carriers for personal lines and commercial lines. PV Insurance is licensed as a Casualty Broker-Agent and a Property Broker-Agent with the California Department of Insurance.

In December 2013, PV Insurance entered into an "Agency-Brokerage Agreement" with AmGUARD. Ex. 200. That agreement "appoint[s] Agent/Broker as an agent of the Insurance Companies" (AmGUARD) and provides that that the "Agent/Broker" (PV Insurance) has the "authority to receive and accept proposals for such Insurance contracts as are listed on Authorization

United States District Court
Northern District of California

and Commission Schedule annexed hereto, subject to restrictions placed upon said Agent/Broker by the laws of the State(s) in which Agent/Broker is authorized to write insurance, to the terms and conditions of this Agreement, to all instructions of the Insurance Companies, and to the Insurance Companies' underwriting policies and procedures." *Id.* ¶ 1(a)-(b). That agreement also provides that the "Agent/Broker shall only have binding authority to the extent expressly set forth in each Authorization and Commission Schedule," that the "Agent/Broker shall also be privileged to place insurance business as a broker with the Managing General Agencies [AmGUARD], subject to the . . . the underwriting policies and procedures of the Managing General Agencies and of the insurance companies underwriting the risks insured." *Id.* ¶ 1(c)-(d). That agreement also contains a "Duty to Investigate Insurability" provision which provides that "The Agent/Broker agrees to investigate carefully the insurability of all applicants, to exercise care in the selection of risks and to acquaint the Companies with all facts that would customarily be ascertained by an insurance agent pertaining thereto." *Id.* ¶ 10. Under the agreement, agents/brokers are authorized to collect, receive, and give receipts for premiums on insurance accepted by AmGUARD and to retain out of premiums commissions that are authorized by AmGUARD. *Id.* ¶ 3(a).

Anna Skelly has worked for PV Insurance since 2000, and since 2014 has held the title Personal Lines Department Manager. In that role, Skelly quotes and obtains new and renewal insurance policies for clients. Skelly is licensed as a Casualty Broker-Agent and a Property Broker-Agent with the California Department of Insurance.

Since 2014, PV Insurance has obtained quotes, submitted insurance applications and procured policies requested by Kihagi for her various businesses. Per Kihagi's requests, Skelly obtained 11 policies for the following businesses owned by Kihagi: Zoriall LLC, Xelan Prop 1 LLC, Nozari 2 LLC, Jambax 2 LL, NIVO 1 LLC and Katoka 5 LLC. PV Insurance procured these policies from various insurance carriers including Crusader Insurance Company, First American Specialty Insurance Company, HDI Gerling America Insurance Company, State National Insurance Company and AmGUARD Insurance Company ("AmGUARD"). In some instances, Kihagi rejected quotes obtained by PV Insurance and placed coverage through a different insurance agency. Skelly always dealt with Kihagi and never dealt with Mwangi.

United States District Court
Northern District of California

Skelly testified that when a client requests a quote for insurance, it was and is her practice to gather as much information as possible about the property and its history, and to submit applications either via an online portal or a paper application to the carrier. Skelly does not review the underwriting questions and answers on applications with clients prior to submitting the applications because when PV Insurance submits initial applications for insurance it is for the purpose of obtaining a price point and determining whether the carrier will even write a policy. Skelly testified that she reviews the underwriting questions with an applicant as close to binding as possible to ensure that the answers are accurate because information can change between the time an applicant first states that they want to obtain insurance and when a policy is bound. Skelly also testified that she always reviews the underwriting questions with clients prior to binding. Skelly stated that because AmGUARD's software system does not permit anyone to change the answers to the underwriting questions once they have been entered, when a client provides a different answer than what was initially entered, she will submit a "conversation" to AmGUARD "if it's something that we thought might be acceptable" and ask AmGUARD to review the conversation and respond.

On July 7, 2015, Kihagi sent an email to Skelly requesting a quote for a Businessowner's Policy for Zoriall for the Hill Street Property. Ex. 3. This was the first time that Kihagi requested that Skelly provide an insurance quote for Zoriall.

Kihagi testified that she did not remember whether she ever signed an agreement on behalf of Zoriall authorizing PV Insurance to represent it as a broker or an agent. Skelly testified that during the time period of Zoriall's application for insurance with AmGUARD, she did not inform Zoriall or Kihagi that PV Insurance was an appointed agent of AmGUARD. Skelly also testified that PV Insurance does not require that a client sign an agreement prior to obtaining an insurance quote.

On July 7, 2015, Skelly submitted an online application to AmGUARD through AmGUARD's proprietary software, the Agency Service Platform, to get a quote. Ex. 7. The only way to submit an application for insurance to AmGUARD is through AmGUARD's online portal; there are no paper applications. AmGUARD's Agency Service Platform is only accessible to insurance agents and brokers who have appointments with AmGUARD, and insureds or potential

insureds cannot access the platform.

Skelly testified she decided to submit the application to AmGUARD based on the characteristics of the Hill Street Property and because she believed that AmGUARD would provide the most competitive premium. As was her practice, Skelly did not review AmGUARD's application underwriting questions with Kihagi prior to submitting the application. One of those underwriting questions (listed under "ACORD Questions" on the application) was "Has the prospect had a foreclosure, repossession, bankruptcy, judgment or tax lien, business failure, or any litigation during the past five years?" Ex. 8. On the initial application for insurance, Skelly responded "no" to that question. The application submitted by Skelly contained the following language,

> THE PERSON PROVIDING THE INFORMATION SET FORTH ABOVE IS AN AUTHORIZED REPRESENTATIVE OF THE APPLICANT AND CERTIFIES THAT REASONABLE ENQUIRY HAS BEEN MADE TO OBTAIN THE ANSWERS TO QUESTIONS ON THIS APPLICATION. HE/SHE CERTIFIES THAT THE ANSWERS ARE TRUE, CORRECT AND COMPLETE TO THE BEST OF HIS/HER KNOWLEDGE.

> I Agree.                              [X]

Ex. 2. Skelly testified that "the person providing the information" was herself, and that the "applicant" was Zoriall.

Skelly obtained a quote from AmGUARD and provided the quote to Kihagi on July 8, 2015. Kihagi agreed to go forward with the quote from AmGUARD. In order to purchase the coverage, Kihagi needed to sign AmGUARD's Terrorism Coverage Offer Form, complete an "Apartment Application Habitational Program" application required by PV Insurance, and provide payment. Kihagi signed AmGUARD's Terrorism Coverage Offer Form on July 8, 2015, completed the "Apartment Application Habitational Program" application on July 16, 2015, and signed the proposal acceptance form on July 16, 2015. Ex. 5, 6.

On Friday July 17, 2015, Kihagi faxed the signed documents to Skelly. Skelly testified that Kihagi's answers to the Apartment Application Habitational Program led her to believe that the Hill Street Property "was not 100% circuit breakers," which would have rendered it ineligible for AmGUARD's insurance. After receiving the documents, Skelly emailed Kihagi informing her that AmGUARD required "100% circuit breakers" and that there might be another carrier that would

5

consider insuring a building with partial fuses, asking a few other questions about the Hill Street Property, and inviting Kihagi to call Skelly's direct line to discuss the matter further. Ex. 9. Skelly testified that because there are no further emails between her and Kihagi regarding the circuit breaker issue, that she and Kihagi must have spoken on the phone about the matter because AmGUARD ultimately bound the policy.

On Monday, July 20, 2015 at 9:12 a.m., Skelly sent Kihagi an email stating "We are all set to bind 69 Hill Street" and asking Kihagi to send her information about the bank loan for the Hill Street Property. Ex. 10. At 9:19 a.m., Kihagi responded by email, stating that she had faxed the bank loan information. *Id.* At 9:44 a.m., Skelly emailed Kihagi stating that the credit card "was coming back invalid," and asking about the correct credit card number. Ex. 246. Kihagi emailed Skelly at 11:50 a.m. stating "don't know which credit card so call me" at her number, and at 12:35 p.m. Skelly responded with an email stating, "I left this number in your voicemail but wanted to make sure you had my direct line: 310-373-0366. Please call me when it's convenient for you." Ex. 10. Skelly and Kihagi then spoke on the phone to confirm which credit card should be used for the payment.

After that conversation, Skelly processed the premium payment. Skelly testified that she took the following steps to submit the premium payment and secure the AmGUARD policy for Zoriall. First, Skelly input the Zoriall quote number into AmGUARD's Agency Service Platform. She then clicked a "request bind" link. After clicking on that link, the page refreshed and stated that the policy has been bound on July 20, 2015. Skelly then clicked a credit card link and entered the payment information. Once the payment was submitted, AmGUARD sent a receipt by email. Ex. 20. Skelly testified that the policy is bound before the payment is submitted, and that she was not aware of any way to submit payment prior to binding.

On July 24, 2015, Skelly emailed Kihagi to inform her that "coverage was bound 7/20/15 at 12:01 a.m." Ex. 11. Skelly testified that "12:01 a.m." is "the standard insurance time" for binding and that although the payment was made later in the day on July 20, 2015, the policy was bound and effective as of 12:01 a.m. on July 20, 2015. AmGUARD issued a Businessowner's Policy, policy number Z0BP601626 to Zoriall LLC for the policy period July 20, 2015 to July 20, 2016.

6

Ex. 1.

Skelly and Kihagi provided conflicting testimony about whether Skelly reviewed the ACORD underwriting questions with Kihagi prior to Skelly requesting AmGUARD to bind the policy. Skelly testified that she reviewed all of the ACORD underwriting questions with Kihagi on either July 17 or July 20, 2015. According to Skelly, in response to the question, "Has the prospect had a foreclosure, repossession, bankruptcy, judgment or tax line, business failure or any litigation during the past five (5) years?," Kihagi responded "no." Skelly testified that if Kihagi had responded "yes," to that question, she would have not been able to bind the policy with AmGUARD and she would have tried to find a different carrier. Skelly testified that she was not aware of Zoriall's prior litigation until 2019 when Skelly received a subpoena for documents.

Skelly provided somewhat different, but not inconsistent, testimony at her deposition. At her deposition, Skelly stated that because she does not document phone calls, she could only give a "vague number" as to the number of times she spoke with Kihagi about obtaining Zoriall's insurance policy, and that "at least one time" was on July 20, 2015, prior to the binding of the policy. Skelly Depo. 181. Skelly also stated in her deposition that "[i]t has not been documented, so I'm not aware of any other conversations" aside from the July 20 conversation, thus not mentioning a conversation on July 17. *Id.* at 182. At trial, when asked about her deposition testimony, Skelly stated that in reviewing all of the email exhibits it appeared that there had been "a hole missing there" where she and Kihagi discussed information, such as the circuit breaker issue, on July 17.

In contrast, on direct examination Kihagi testified repeatedly that Skelly never asked her the ACORD underwriting questions, including the question about whether Zoriall had been involved in any litigation during the prior five years, at any point in the process of Zoriall applying for insurance from AmGUARD. Kihagi stated that she remembered completing the Apartment Habitation Application, that she generally communicated with PV Insurance through email, and that PV Insurance normally responded to her emails rather than calling her to discuss matters. Kihagi also testified that she dealt primarily with Skelly. However, later in her trial testimony Kihagi was asked whether, at any time prior to applying for the AmGUARD policy, she informed anyone at PV Insurance that Zoriall had been involved in litigation in the prior five years. In response, Kihagi

7

provided nonresponsive and evasive answers and ultimately stated that she could not recall. Significantly, at her December 14, 2021 deposition, Kihagi testified that she did not have any independent recollection of the details regarding Zoriall obtaining the AmGUARD policy aside from the documents, such as emails between Kihagi and Skelly, that Kihagi was shown during her deposition. Kihagi Depo. at 49-56.

At trial, Kihagi also provided vague answers about whether Zoriall had been involved in litigation within five years before the inception date of the AmGUARD policy. When asked whether Zoriall had been involved in any such litigation, Kihagi initially answered that she did not know the exact date and thus would be "guesstimating." After she was shown an unlawful detainer complaint filed by Zoriall against Dale Duncan and Marta Munoz Mendoza on June 25, 2015, containing her signature on the verification, Kihagi acknowledged that Zoriall had been involved in litigation "in the context of this" within the five years prior to Zoriall's application for insurance with AmGUARD. Ex. 32.

Kihagi also testified that she could not recall whether she was aware of a May 2015 lawsuit filed by Duncan and Mendoza against Zoriall at the time Zoriall applied for the AmGUARD policy. Ex. 31. However, AmGUARD's counsel then showed Kihagi a notice of demurrer filed by Zoriall in that lawsuit on June 11, 2015, which refreshed Kihagi's recollection about the existence of that lawsuit. Ex. 35. Similarly, when shown the complaint filed on June 4, 2015 by the City and County of San Francisco against Zoriall, Kihagi, and others, Kihagi testified that she did not know whether she was aware of that lawsuit at the time of the AmGUARD insurance application, despite a proof of service showing that Kihagi's authorized agent for process of service had been served with the complaint on June 16, 2015. Ex. 33, 36.

The Court finds Skelly to be a more credible witness than Kihagi, and thus finds that Skelly did review the underwriting questions with Kihagi prior to issuance of the AmGUARD policy. Skelly consistently testified that she had a specific recollection of speaking with Kihagi about the underwriting questions, and that it is always her practice (and that of PV Insurance), on every policy and regardless of carrier, to first submit the insurance application without reviewing the underwriting questions with an applicant, and then to review the questions with the applicant very

8

close in time to finalizing the application and requesting the insurance carrier to issue the policy. It is the Court's view that it would be a much better practice for PV Insurance to document the review of underwriting questions in writing. However, despite the lack of written documentation of that specific conversation, the emails between Kihagi and Skelly on July 17 show, by a preponderance of the evidence, that they spoke on the phone on July 17 about AmGUARD's underwriting of the Zoriall policy (the circuit breaker issue), and the Court finds that the Kihagi and Skelly spoke on July 17 about the ACORD underwriting questions, including the prior litigation question. Zoriall's application for insurance with AmGUARD. The Court finds that this conversation occurred on July 17 and not July 20 because the July 20 emails indicate that Skelly was attempting to process Zoriall's credit card payment the morning of July 20, and as per Skelly's testimony, submitting the credit card information is one of the final steps in the process of procuring the policy.

In contrast to Skelly's largely consistent and clear testimony, Kihagi provided internally inconsistent and evasive testimony. Although Kihagi testified that Skelly never asked her the ACORD underwriting questions, she also testified that she did not recall many details about Zoriall's application for insurance and, at her deposition, testified that her recollection of the process was entirely based on what was contained in the documents. The Court also finds incredible Kihagi's trial testimony that she did not know – at the time of trial – whether Zoriall had been involved in litigation in the five years prior to applying for the AmGUARD policy. Such testimony strains credulity in the context of a trial in which Zoriall's prior litigation is a central issue, and where Kihagi is the managing member of Zoriall.

## II.    AmGUARD's Underwriting

Pursuant to AmGUARD's underwriting requirements and policies for businessowners policies, AmGUARD will not issue quotes or write policies for an applicant that has had litigation during the five years prior to the insurance application. AmGUARD has determined that prior litigation within the past five years is an unacceptable risk that AmGUARD will not agree to insure. Albin Marcincavage of AmGUARD testified that AmGUARD's proprietary software is programmed to automatically decline an insurance application if an applicant has answered "yes"

9

to the prior litigation underwriting question.  Marcincavage also testified that to his knowledge, AmGUARD has never issued a Businessowner's policy to an applicant who answered "yes" to the prior litigation underwriting question.

At the time Zoriall's insurance application was submitted to AmGUARD, Zoriall was involved in the following four lawsuits: (1) *Dale Duncan, Marta Munoz Mendoza v. Anne Kihagi, Zoriall LLC, Christina Mwangi et al*., San Francisco Superior Court, Case No. CGC15-545655, filed on May 4, 2015 ("*Duncan I*"); (2) *Zoriall LLC v. Dale Richard Duncan, Marta Munoz Mendoza*, San Francisco Superior Court, Case No. CUD-15-652719, filed on June 25, 2015 ("*Duncan UD Action*"); 3) *City and County of San Francisco et al. v. Anne Kihagi, Christine Mwangi, Zoriall LLC et al*., San Francisco Superior Court, Case No. CGC-15-546152, filed on June 4, 2015 ("*City Action*"); and 4) *Nicholas Reggars and Erin Fromherz v. Anne Kihagi, Zoriall LLC, Christine Mwangi et al*., San Francisco Superior Court, Case No. CGC-15-546342, filed on June 12, 2015 ("*Reggars Action*") ("Prior Lawsuits").  Ex. 31-34.

The Court finds that Zoriall, through Kihagi, was aware of *Duncan I*, the *Duncan UD Action*, and the *City Action* prior to obtaining the AmGUARD Policy.  Zoriall filed a demurrer in *Duncan I* on June 11, 2015, Kihagi's agent of service of process was served with the *City Action* on June 16, 2015, and Kihagi signed the June 25, 2015 verification in the *Duncan UD Action*.  Skelly did not know about the Prior Lawsuits prior to the issuance of the AmGUARD Policy, and was not aware of any litigation involving Zoriall until 2019.  At no time during the process of applying for the Policy did the Zoriall defendants disclose to AmGUARD the existence of *Duncan I*, the *Duncan UD Action*, the *City Action* or the *Reggars Action*.

III.    **The *Smyth* and *Duncan* Lawsuits**

Starr issued an insurance policy to Zoriall, policy number SIPGML01504-00, effective July 25, 2014 to July 25, 2015.  Starr is seeking equitable contribution, equitable subrogation and equitable indemnity from AmGUARD for the amounts Starr contends AmGUARD is responsible for the *Duncan* and *Smyth* lawsuits.

On May 4, 2015, Dale Duncan and Marta Munoz Mendoza filed a lawsuit against Anne

1    Kihagi, Zoriall LLC, Christine Mwangi, and others.  *Dale Duncan, Marta Munoz Mendoza v. Anne*
2    *Kihagi, Zoriall LLC, Christina Mwangi et al*., San Francisco Superior Court, Case No. CGC15-
3    545655 filed on May 4, 2015 ("*Duncan I*").  On April 15, 2016, Duncan and Mendoza filed a
4    complaint in an action titled *Duncan v. Kihagi*, San Francisco Superior Court, Case No. CGC 16-
5    551512 ("*Duncan II*").  On July 27, 2016, *Duncan I* and *Duncan II* were consolidated by the court
6    for trial (the "*Duncan* Lawsuits").

7         On July 21, 2015, Brian Smyth and Ben Hutchinson filed a complaint in the San Francisco
8    Superior Court against Anne Kihagi, Zoriall LLC, and Christina Mwangi titled *Smyth v. Kihagi*,
9    Case No. CGC-15-546973 (the "*Smyth I* Action").  On July 26, 2016, Brian Smyth and Ben
10   Hutchinson filed a second lawsuit against the Zoriall defendants titled *Smyth v. Kihagi et al*., San
11   Francisco Superior Court, Case No. CGC 16-553236 (the "*Smyth II* Action").

12        Starr agreed to defend the Zoriall defendants in *Duncan I* and *Duncan II* under a full
13   reservation of rights by letters dated July 13, 2015 and July 6, 2016 respectively.  Ex. 45.  Starr
14   agreed to defend the Zoriall defendants in *Smyth I* and *Smyth II* under a full reservation of rights by
15   letters dated December 14, 2015 and September 27, 2016 respectively.  At the time that Starr agreed
16   to defend the Zoriall defendants in the *Duncan* and *Smyth* Lawsuits, Starr was not aware of the
17   existence of Zoriall's insurance policy with AmGUARD.

18        On June 30, 2017, the *Duncan* and *Smyth* Lawsuits were consolidated.

19        The *Duncan* Lawsuits were tried to a jury beginning August 29, 2017.  On October 17, 2017,
20   Judge Andrew Y.S. Cheng entered judgment on a jury verdict against the Zoriall defendants. The
21   judgment stated that Duncan and Mendoza are each entitled to judgment against each of the Zoriall
22   defendants in the amount of $588,000 against each defendant for a total sum of $3,528,000 against
23   all the Zoriall defendants.  Judge Cheng issued an Amended Judgment on December 7, 2017 in the
24   Duncan Lawsuits reducing the total recovery in favor of Duncan and Mendoza and against the
25   Zoriall defendants to $2,700,000.

26        Starr learned in approximately November 2017 that another insurance carrier had issued a
27   policy to Zoriall.

28        On November 30, 2017, AmGUARD issued a "Claim Acknowledgment" of a Notice of Loss

involving claimant "Brian Smith" with a date of loss of November 15, 2016. Ex. 22. This document was generated in response to Kihagi calling AmGUARD and informing AmGUARD that Zoriall was involved in settlement discussions in the *Smyth* Lawsuits and requesting that AmGUARD provide coverage and participate in those negotiations. Ex. 29. On December 4, 2017, Kihagi sent a copy of the complaints in *Smyth I* and *Smyth II* to AmGUARD. Ex. 23.

By letter dated January 11, 2018, Shana Messinger, a Coverage Analyst at AmGUARD, advised Zoriall that AmGUARD would participate in the defense of the *Smyth* Lawsuits under a complete reservation of rights. Ex. 24. Messinger also advised that AmGUARD had retained defense counsel Kennedy & Souza to defend Zoriall. In her letter, Messinger stated:

> Neither AmGUARD's investigation into this claim for coverage, this letter, nor any other correspondence or communication from or on behalf of AmGUARD, should be deemed or construed as a waiver of any rights or defenses it may have, including its rights and defenses under the Policy, any applicable contract of insurance, by statute, or at common law. This letter is therefore without prejudice to AmGUARD's rights and defenses under the Policy, and AmGUARD hereby reserves all such rights and defenses.
>
> . . .
>
> The statement in this letter of AmGUARD's grounds for reserving its right to deny coverage under the Policy should not be deemed to waive any additional defense to coverage or ground for denial of coverage and defense under that Policy. Rather, AmGUARD specifically reserves its right to assert and rely upon any further defense to coverage that may be available under the terms and conditions of the Policy, regardless of whether it is stated above or whether the basis for its assertion is or could have been presently known.

*Id.*

In March 2018, the AmGUARD claims department referred the *Smyth* claim to AmGUARD's legal department for further investigation. Shayne McGrady was assigned to the matter.

By letter dated June 22, 2018, Mr. McGrady sent an updated reservation of rights letter to Zoriall with respect to the *Smyth* Lawsuits. Ex. 25. The letter states, in pertinent part, that:

> As you know, AmGUARD has appointed defense counsel to represent you in these matters. However, we understand you have chosen to be represented by Richard Diestel of the Law Firm of Bledsoe, Diestal, Treppa & Crane, LLP. AmGUARD understands Attorney Diestel was retained with your agreement to satisfy your right to independent counsel. AmGUARD will join in paying (with Starr Insurance) the reasonable fees associated with your defense, to the extent you are covered by the Policy and the fees conform to Civil Code section 2860. In this regard, AmGUARD

agrees to pay your defense costs and fees without waiving any of its rights. To this end, AmGUARD expressly reserves its right to exercise its discretion in the investigation, defense or settlement of any claim or suit stemming from this incident. As stated, AmGUARD has the right to defend an insured seeking coverage for damages for which the insured is legally liable.

. . .

As stated before, neither AmGUARD's investigation into this claim, nor any other correspondence or communication from or on behalf of AmGUARD, should be deemed or construed as a waiver of any rights or defenses that AmGUARD may have, whether under the AmGUARD Policy, by statute, or at common law.  This letter is therefore without prejudice to AmGUARD's ability to raise any additional rights and defenses it may have and reserves all such rights and defenses.

. . .

By transmitting this letter, AmGUARD has not waived or modified any of the terms, conditions, exclusions or limitations of the Policy, nor has AmGUARD waived any of its rights or defenses under the Policy, any applicable contracts(s) of insurance, by statute or at common law all of which are expressly reserved.  No Actions heretofore or hereinafter taken by AmGUARD shall not constitute a waiver either of its Policy provision or its rights thereunder all of which are hereby reserved.

*Id.*

The Zoriall defendants never tendered the *Duncan* Lawsuits to AmGUARD for defense or indemnity.  In an email sent on July 10, 2018, Craig Gordon of Starr tendered the *Duncan* and *Smyth* lawsuits to AmGUARD.  Ex. 26, 227.  In that email, Starr expressly reserved its right to seek contribution and/or subrogation from AmGUARD for all defense fees and costs that Starr had incurred.  In that email, Mr. Gordon also stated that "Starr does not agree that the Duncan/Mendoza lawsuit was not tendered to GUARD as, at the very least, GUARD had constructive notice of the Smyth/Hutchinson lawsuit."  *Id.*

In a letter dated August 24, 2018 addressed to Zoriall, Kihagi and Christine Mwangi, AmGUARD declined coverage for the *Duncan* Lawsuits.  Ex. 27.  The letter, signed by McGrady, stated AmGUARD's position that Zoriall breached the General Conditions of the policy by, *inter alia*, failing to notify AmGUARD of the *Duncan* Lawsuits "as soon as practicable."  *Id.*  The letter also stated that by transmitting the letter, AmGUARD had not waived any of its rights or defenses "under the Policy, any applicable contract(s) of insurance, by statute or at common law all of which are expressly reserved."  *Id.*

During McGrady's investigation of the *Smyth* and *Duncan* claims and lawsuits, McGrady

learned that Zoriall was involved in various lawsuits that were filed prior to the inception of the AmGUARD Policy, including *Duncan I* and the *City Lawsuit*. McGrady also reviewed Zoriall's application for insurance with AmGUARD, including specifically Zoriall's "no" answer to the ACORD question asking about whether the applicant had been involved in litigation within the previous five years.

On July 6, 2018, McGrady hired a private investigator, Joseph Jones of Bosco Legal Services, to assist with his investigation. In August 2018, Mr. Jones provided McGrady with information showing that Zoriall had been served with litigation prior to applying for insurance with AmGUARD. McGrady testified that it was not until September 2018, after receiving information from coverage counsel, that AmGUARD determined that the Zoriall policy was void due to misrepresentation or concealment.

In the fall of 2018, there were several mediations in the *Smyth* Lawsuits. At the final mediation in September 2018, AmGUARD made an offer to contribute to the *Smyth* settlement contingent on receiving a full and final release in the *Duncan* Lawsuits. Starr rejected AmGUARD's offer, and AmGUARD informed Starr that it would no longer participate in the indemnification or defense of the *Smyth* Lawsuits. Starr settled the *Smyth* Lawsuits without any contribution from AmGUARD. Neither at this time nor at any time prior to the filing of this lawsuit, did AmGUARD inform Starr or the Zoriall defendants that it was seeking recission of the policy.

## CONCLUSIONS OF LAW

### I.    Skelly's Status as Broker or Agent in Connection with the AmGUARD Application

The parties dispute whether PV Insurance acted as Zoriall's broker or AmGUARD's agent with respect to Zoriall's application for insurance with AmGUARD. California law distinguishes between an "insurance broker" and an "insurance agent." An insurance agent is "a person authorized, by and on behalf of an insurer, to transact all classes of insurance other than life, on behalf of an admitted insurance company." Cal. Ins. Code § 31. An agent's primary obligation is to represent the insurer in the transaction of insurance with the general public and to bind the insurer on coverage. *See Marsh & McLennan of Calif., Inc. v. City of Los Angeles*, 62 Cal.App.3d 108,

117-18 (1976).

An "insurance broker" is "a person who, for compensation and on behalf of another person, transacts insurance other than life . . . with, but not on behalf of, an insurer." Cal. Ins. Code § 33. In securing a policy for a client, a broker acts only on behalf of the client (the insured) not the insurer. *See Carlton v. St. Paul Mercury Ins. Co*., 30 Cal.App.4th 1450, 1457 (1994). California Insurance Code § 1623 provides,

> It shall be presumed that the person is acting as an insurance broker if the person is licensed to act as an insurance broker, maintains the bond required by this chapter, and discloses, in a written agreement signed by the consumer, all of the following:
>
> (1) That the person is transacting insurance on behalf of the consumer.
>
> (2) A description of the basic services the person will perform as a broker.
>
> (3) The amount of all broker fees being charged by the person.
>
> (4) If applicable, the fact that the person may be entitled to receive compensation from the insurer, directly or indirectly, for the consumer's purchase of insurance as a consequence of the transaction.

Cal. Ins. Code § 1623(a)(1)-(4). In some situations, an insurance salesperson can act in a dual capacity as a broker for the insured and an agent for the insurer. *See Mark Tanner Const. v. Hub Int'l. Ins. Servs*., 224 Cal.App.4th 574, 584 (2014); *see also* Cal. Ins. Code § 1732.

AmGUARD contends that Skelly acted as Zoriall's broker with regard to the insurance application because, *inter alia*, the insurance application states that PV Insurance is the authorized representative of Zoriall. Under this theory, Zoriall is bound by the misrepresentation in the application and it is irrelevant that Kihagi claims that Skelly never reviewed the ACORD questions with her prior to binding of the policy. *See Imperial Cas. & Indem. Co. v. Sogomonian*, 198 Cal.App.3d 169, 178-79 (1988) (where insurance application omitted material facts and broker was aware of some but not all omitted facts, omissions were chargeable to insureds). Conversely, under Starr's theory of the case Skelly was AmGUARD's agent, and because Skelly never reviewed the ACORD questions with Kihagi, AmGUARD is bound by Skelly's omissions. *Cf. Byrd v. Mutual Benefit Health & Accid. Ass'n*, 73 Cal.App.2d 457, 463 (1946) (holding insurance company may be estopped from rescinding policy where insured claimed he made full disclosure of material facts to insurance company's agent who failed to include those facts in the application).

15

The Court finds that the evidence regarding Skelly's status was equivocal.  Skelly and PV Insurance were licensed as broker-agents.  PV Insurance had an Agency-Brokerage contract with AmGUARD authorizing PV Insurance to act as AmGUARD's agent.  However, PV Insurance was not a captive AmGUARD agent, and in 2015 PV Insurance had appointments with multiple insurance companies.  Skelly never informed Kihagi that PV Insurance was an AmGUARD agent, and there is no written broker agreement between Zoriall and PV Insurance.  As AmGUARD stresses, the application states the PV Insurance is the "authorized representative" of Zoriall.  In addition, Skelly procured insurance for Kihagi from various insurance companies, and Kihagi sometimes rejected the proposals that Skelly obtained and placed coverage elsewhere.  *See Mercury Ins. Co. v. Pearson*, 169 Cal.App.4th 1064, 1073 (2008) ("If an insurance agent is the agent for several companies, and either selects the company with which to place the insurance or picks an insurer at the insured's direction, the insurance agent is the agent of the insured, not the insurer.").  Under the totality of the evidence at trial, the Court finds it is more likely than not that Skelly acted as Zoriall's broker with regard to the AmGUARD application.

However, even if Skelly was acting as AmGUARD's agent with regard to the application, that agency status is immaterial because the Court has found credible Skelly's testimony that she reviewed the ACORD underwriting questions with Kihagi prior to binding and that Kihagi misrepresented that Zoriall had not been involved in prior litigation.  *Cf. O'Riordan v. Federal Kemper Life Assur.*, 36 Cal.4th 281, 299 (2005) (holding insurance agent's knowledge is imputed to the insurer).  *Byrd*, 73 Cal.App.2d at 463.  Because Kihagi misrepresented and concealed Zoriall's prior litigation from Skelly, regardless of whether Skelly was Kihagi's broker or AmGUARD's agent, Zoriall is responsible for the misrepresentation, not Skelly or AmGUARD.

## II.     AmGUARD is Entitled to Rescind the Policy

AmGUARD's third party complaint and counterclaim seek rescission of the Zoriall policy.  "When a policyholder conceals or misrepresents a material fact on an insurance application, the insurer is entitled to rescind the policy."  *LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co*, 156 Cal.App.4th 1259, 1266-67 (2007); Cal. Ins. Code § 331 ("Concealment, whether intentional

or unintentional, entitles the injured party to rescind insurance."); Cal. Ins. Code § 359 ("If a representation is false in a material point . . . the injured party is entitled to rescind the contract from the time the representation becomes false.").  "Courts have applied Insurance Code sections 331 and 359 to permit rescission of an insurance policy based on an insured's negligent or inadvertent failure to disclose a material fact in the application for insurance." *Mitchell v. United National Ins. Co*., 127 Cal.App.4th 457, 469 (2005).  "Therefore, misstatement or concealment of 'material' facts is ground for rescission *even if unintentional*.  The insurer need not prove that the applicant-insured actually intended to deceive the insurer."  Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2022) §5:169 (emphasis in original); *see also LA Sound*, 156 Cal.App.4th at 1270 ("In this case involving rescission for misrepresentations in the application, St. Paul did not need to show the misrepresentations were intentional.").  An insurer has the right to rely on the insured's answers to the questions in the insurance application without verifying their accuracy.  *See Robinson v. Occidental Life Insur. Co*., 131 Cal.App.2d 581, 585 (1955) ("It was not incumbent upon [the insurer] to investigate [the insured's] statements made to the examiner . . . it was [the insured's] duty to divulge fully all he knew.").  AmGUARD bears the burden of proof to establish concealment or misrepresentation of material facts.  *Thompson v. Occidental Life Ins. Co. of Calif.*, 9 Cal. 3d 904, 919 (1973).

Substantial evidence shows that Zoriall concealed and misrepresented the existence of prior litigation on its insurance application.  AmGUARD's application explicitly asked about the existence of prior litigation within the prior five years.  At the time of Zoriall's application for insurance, Zoriall was involved four lawsuits.  Nonetheless, Zoriall answered "no" to the prior litigation question.  The existence of prior litigation during the past five years is material to AmGUARD's underwriting of the AmGUARD Policy.  *See  LA Sound v. St. Paul Fire & Marine Ins. Co*., 156 Cal.App.4th 1259, 1268-69 (2007) ("materiality is determined solely by the probable and reasonable effect which truthful answers would have had upon the insurer.  The fact that the insurer has demanded answers to specific questions in an application for insurance is in itself usually sufficient to establish materiality as a matter of law."); *see also Admiral Ins. Co. v. Debber*, 442 F.Supp.2d 958, 967 (E.D. Cal. 2006) (granting summary judgment on insurer's claim for rescission

17

and holding insured made material misrepresentation by answering "no" to question asking about claims or litigation within previous five years where insured was involved in two lawsuits).  Further, the undisputed evidence at trial showed that AmGUARD would not have issued a policy to Zoriall if the prior litigation question had been answered "yes" because a "yes" answer would have resulted in an automatic declination.  *See Douglas v. Fid. Nat'l Ins. Co*., 229 Cal.App.4th 392, 408 (2014) ("[A] misrepresentation or concealment is material if a truthful statement would have affected the Insurer's underwriting decision.").

The Court concludes that AmGUARD has met its burden to show that it is entitled to rescind the Zoriall policy based on a material misrepresentation in the application.  As such, the AmGUARD Policy is void *ab initio*, *LA Sound*, 156 Cal.App.4th at 1266-67 (2007); *Mitchell*, 127 Cal.App.4th at 463, and there is no coverage available for the *Smyth* and *Duncan* Lawsuits under the AmGUARD policy.  *Imperial Cas. & Indem. Co.*, 198 Cal.App.3d at 182 ("[A] rescission effectively renders the policy totally unenforceable from the outset, so that there never was any coverage, and therefore no benefits are payable."); *Superior Dispatch, Inc. v. Ins. Corp. of N.Y.*, 181 Cal.App.4th 175, 192 (2010) ("A misrepresentation or concealment of a material fact in an insurance application also establishes a complete defense in an action on the policy."); *Resure, Inc. v. Sup. Ct*., 42 Cal.App.4th 156, 162 (1996); Cal. Ins. Code § 650 ("[t]he rescission shall apply to all insureds under the contract, including additional insureds, unless the contract provides otherwise."); *Watts v. Farmers Ins. Exch*., 98 Cal.App.4th 1246, 1258 (2002) (citation omitted); *Western Mutual Ins. Co. v. Yamamoto*, 29 Cal.App.4th 1474, 1486-87 (1994); *Philadelphia Indem. Ins. Co. v. Montes-Harris*, 40 Cal.4th 151, 157 (2006) (liability insurer could avoid liability to third party injured by the insured).

**III.    Starr's Equitable Defenses to Rescission; Laches, Waiver and Estoppel**

Laches, waiver and estoppel are affirmative defenses for which Starr has the burden of proof. *Waller v. Truck Ins. Exch.*, 11 Cal.4th 1, 33-34 (1995), *as modified on denial of reh'g* (Oct. 26, 1995); *Miller v. Eisenhower Med. Ctr.*, 27 Cal.3d 614, 624 (1980).

A.    **Laches**

"[T]he affirmative defense of laches requires unreasonable delay in bringing suit 'plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay.'" *Miller v. Eisenhower Med. Ctr.*, 27 Cal.3d 614, 624 (1980).  "[T]he main question is whether the time elapsing between the date of discovery and the time of rescission was unreasonable under the circumstances." *Cole v. Calaway*, 140 Cal.App.2d 340, 347 (1956).

To the extent Starr contends that AmGUARD cannot rescind the policy because AmGUARD did not assert rescission until the filing of this lawsuit, Starr is wrong.  *See LA Sound*, 156 Cal. App. 4th at 1267-1268 (rejecting identical arguments and holding that insurer preserved right to rescind by asserting rescission as an affirmative defense and counterclaim).  In addition, under the circumstances of this case, the Court finds that AmGUARD did not unreasonably delay in asserting rescission.  AmGUARD took a reasonable amount of time to investigate whether Zoriall's application contained a misrepresentation.  It is not clear why, once AmGUARD confirmed the misrepresentation in September 2018, it did not promptly assert rescission.  However, the Court cannot conclude that the delay between September 2018 and April 2020 (when AmGUARD filed its Third Party Complaint and Counterclaim) is unreasonable.

More importantly, Starr has not shown that it was prejudiced by the delay.  Starr defended Zoriall in the *Duncan*  and *Smyth* Lawsuits because Starr issued a policy to Zoriall, and did so under a reservation of rights well before Starr was aware of the AmGUARD policy.  The *Duncan* Lawsuits proceeded to trial and judgment before Starr tendered the *Duncan* Lawsuits to AmGUARD, and AmGUARD promptly denied coverage.  With regard to the *Smyth* Lawsuits, although AmGUARD agreed to share defense and indemnity costs with Starr in a January 2018 letter *to Zoriall*, it did so under a full reservation of rights.  Further, at the final mediation of the *Smyth* Lawsuits in September 2018, AmGUARD informed Starr that it would no longer participate in the indemnification or defense of the *Smyth* Lawsuits.  Starr proceeded to settle the *Smyth* Lawsuits with knowledge that AmGUARD was no longer participating in indemnity or defense.  Starr did not introduce any evidence at trial showing that it would have taken different actions had it known that AmGUARD would seek to rescind the Zoriall policy.  Instead, Mr. Sweeney simply testified that Starr "believed"

United States District Court
Northern District of California

Case 3:20-cv-00959-SI   Document 186   Filed 01/24/23   Page 20 of 22

that AmGUARD would share in the defense and indemnity of Zoriall. Under all of these circumstances, Starr has not shown that it was prejudiced by AmGUARD waiting until this lawsuit to assert rescission.

### B.    Waiver

"Waiver is the intentional relinquishment of a known right. An insurer does not waive its right to rescind a policy on the ground of false representations if it was unaware of the falsity of those representations." *Mitchell*, 127 Cal. App. 4th at 476 (internal citations omitted). To demonstrate waiver, Starr must show that AmGUARD intentionally waived its right to rescind "after knowledge of the facts." *Waller*, 11 Cal.4th at 31-32.

AmGUARD did not waive its right to rescind Zoriall's policy on the basis of misrepresentations in the application because AmGUARD was unaware of the misrepresentation until the investigation by McGrady and the private investigator revealed the misrepresentation in the fall of 2018. Moreover, for the period of time that AmGUARD defended Zoriall in the *Smyth* Lawsuits, it did so under a full reservation of rights, and AmGUARD's denial letter of Starr's tender of the *Duncan* Lawsuits included a statement that AmGUARD had not waived any of its rights or defenses. It is immaterial that the reservation of rights and denial letters did not specifically mention rescission. *See LA Sound*, 156 Cal.App.4th at 1271 (holding insurance company did not waive its right to rescind because, *inter alia*, "St. Paul accepted the defense pursuant to a reservation of rights, including its right to 'deny coverage' and 'recover amounts paid if it is later determined that there is no coverage.'"); *see also Waller*, 11 Cal. 4th at 31, 900 P.2d 619, 636 (1995) ("California courts have applied the general rule that waiver requires the insurer to intentionally relinquish its right to deny coverage and that a denial of coverage on one ground does not, absent clear and convincing evidence to suggest otherwise, impliedly waive grounds not stated in the denial.").

### C.    Estoppel

"Generally four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall

be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." *Colony Ins. Co. v. Crusader Ins. Co.*, 188 Cal.App.4th 743, 751 (2010) (internal quotation marks and citations omitted); *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1559 (9th Cir. 1991) (citation omitted) (estoppel applies where the conduct of one side has induced the other to take such a position that it would be injured if the first should be permitted to repudiate its acts).

For all of the reasons stated above with regard to laches and waiver, AmGUARD is not estopped from rescinding the AmGUARD Policy or denying the claims at issue based upon material misrepresentation. In addition to AmGUARD being unaware of Zoriall's misrepresentations on the insurance application, Starr did not defend Zoriall in reliance upon anything that AmGUARD did. Starr defended Zoriall in the *Duncan* and *Smyth* Lawsuits because it issued an insurance policy to Zoriall, and Starr's decisions to defend Zoriall pursuant to a full reservation of rights were made before Starr was even aware of the existence of the AmGUARD policy. The *Duncan* Lawsuits proceeded to trial and judgment before AmGUARD was notified about them, and Starr settled the *Smyth* Lawsuits after Starr rejected AmGUARD's settlement offer and after AmGUARD notified Starr that it would not participate in the settlement. Based on the totality of the evidence at trial, Starr failed to demonstrate that it reasonably relied to its detriment on anything that AmGUARD did. *See Civil Service Emp. Ins. Co. v. Blake*, 245 Cal.App.2d 196, 198 (1966) (auto liability policy could be rescinded for false statements by insured regarding his health and driving record even after insured had caused accident injuring victim while policy was in effect); *U.S.A. Nutrasource, Inc. v. CNA Ins. Co.*, 140 F.Supp.2d 1049, 1055 (N.D. Cal. 2001); *San Francisco Bay Area Rapid Transit District v. General Reinsurance Corporation*, 111 F.Supp.3d 1055, 1072–1073 (N.D. Cal. 2015), aff'd 726 Fed.Appx. 562 (9th Cir. 2018); *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1559 (9th Cir. 1991).

Because the Court concludes that AmGUARD is entitled to rescind the policy and that Starr's affirmative defenses to rescission lack merit, the Court need not separately address AmGUARD's affirmative defenses of misrepresentation, fraud and concealment.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## CONCLUSION

The Court concludes that AmGUARD is entitled to rescind the Zoriall policy, and thus has no obligation to defend or to indemnify the *Smyth* or *Duncan* Lawsuits. Starr is not entitled to any reimbursement, contribution, subrogation or indemnity from AmGUARD with respect to the defense fees and costs and the settlement amount paid with respect to the *Smyth* Lawsuits, and Starr is not entitled to any reimbursement, contribution, subrogation or indemnity from AmGUARD with respect to the defense fees and costs incurred with respect to the *Duncan* Lawsuits.

As such, there will be no Phase II trial. The parties shall file a joint letter with the Court within seven days of the filing of this opinion stating whether any further proceedings in this case are required or whether final judgment may be entered.

**IT IS SO ORDERED**.

Dated: January 24, 2023

SUSAN ILLSTON
United States District Judge

22